1. PELZER MANUFACTURING COMPANY v. SUN FIRE OFFICE.

2. SAME v. GERMAN AMERICAN INSURANCE CO.

3. SAME v. HIBERNIA INSURANCE COMPANY.

4. SAME v. SAME.

5. SAME v. HAMBURG–BREMEN INSURANCE CO.

6. SAME v. SAME.

7. SAME v. SOUTHERN INSURANCE COMPANY.

8. SAME v. SAME.

9. SAME v. AMERICAN FIRE INSURANCE CO.

10. SAME v. SAME.

1. CONSOLIDATION—REMOVAL OF CAUSES.—A motion was made to consolidate two cases and remove them to the United States Circuit Court, and other motions were made by the same attorneys at the same time to remove other cases of like nature against other defendants, two against each being incorporated in each motion. The latter motions were treated as motions to consolidate as well as to transfer.

2. IBID.—IBID.—A motion to consolidate two cases of same plaintiff against same defendant, and to remove them so consolidated to the United States Circuit Court, the two cases being combined in one petition and in one bond, both entitled of the two cases, was properly refused, because one of the cases involved an amount not within the jurisdiction of the Federal Court in such cases, and there was no application for the removal of the other alone.

3. IBID.—A motion to consolidate causes is addressed to the legal discretion of the court, and may properly be refused when the effect would be to oust the jurisdiction of the court before which the motion is presented.

4. REMOVAL OF CAUSES—JURISDICTION.—Whenever a cause is removed from the State to the Federal Courts, the due filing of a petition for removal and of bond, operates to transfer the cause without an order from the State court directing such removal. The State court there-

upon loses its jurisdiction, and could not thereafter order a consolidation of the cases so removed.

5. IMMATERIAL QUESTION.—It is immaterial to inquire whether the Circuit Judge erred in refusing to pass upon the equitable issue raised by plaintiff's prayer in his complaint to have the policy of insurance sued on, so reformed as to cover a loss thereunder, where the judge charged the jury that the policy as written covered such loss.

6. EVIDENCE—OFFER OF COMPROMISE.—A letter from the assured to the insurer after a loss by fire, offering to assign, on payment of the policy, all right of action against a railroad company which had caused the fire, is not an offer of compromise, and, as such, improper evidence in action on the policy.

7. EVIDENCE—IRRELEVANT AVERMENTS.—Testimony in support of an allegation of the complaint, denied by the answer, is not irrelevant. If the allegation is irrelevant, a motion to strike out is the proper way to meet it.

8. IMMATERIAL QUESTION.—This court is not required to pass upon the competency of testimony affecting only a matter which has been eliminated from the case.

9. EVIDENCE IN REPLY—CONDUCT OF OTHERS.—In action on a policy of insurance covering cotton stored in a warehouse on the right of way of a railroad company, defendant resisted payment on the ground that the assured, without defendant's knowledge, had released the railroad company from all damage done by fire caused by sparks from its passing engines, the admitted cause of the fire in this case, and offered testimony to show that respectable insurance companies regarded this right of subrogation so highly that they would not take risks, or at same rates, where there was such a release. *Held,* that plaintiff in reply might prove that reputable companies did take risks, at no higher rates, where they had knowledge of such release.

10. COMMON REPUTATION.—The nature of the business of the assured having been proved by plaintiff, testimony that this business was generally known in the community was competent in his behalf, such knowledge being a circumstance which tended to show that resident agents of the defendant also knew it.

11. DEPOSITIONS—INDORSEMENT.—Under a statute requiring depositions in a cause to be sealed up in an envelope with the title of the cause endorsed thereon, there was no error in refusing to receive, on the trial of A against C, a deposition entitled "A against B and others— 10 cases."

12. EVIDENCE IN REPLY—PAROL PROOF OF OWNERSHIP OF LAND.—In action on a policy of insurance covering a warehouse and cotton stored therein, the plaintiff in reply may offer parol testimony as to the ownership of the land on which the warehouse stood, the defendant having opened the way by asking a witness as to the ownership. More-

over, the title not being in issue, but a merely collateral matter, reputed ownership may be proved by parol.

13. PROOF OF LOSS—PAROL TESTIMONY—WAIVER.—The substantive fact that proofs of loss had been made and delivered may be proved by parol, no testimony as to the contents being offered ; especially so where the proofs of loss had been delivered to the insurer and left with it. And when the insurer claims that the policy is forfeited or void, proof of loss, preliminary to an action, is waived.

14. POLICY OF INSURANCE—CONSTRUCTION—VOLUNTARY ASSOCIATION.— A policy of insurance must be construed, like all other contracts, by the terms used, interpreted in the light of surrounding circumstances. Its plain import cannot be affected by an interpretation put upon it by a Tariff Association, a voluntary organization composed of the insurer and other insurance companies in the same territory.

15. WAREHOUSEMAN—INSURABLE INTEREST—DESCRIPTION.—A warehouseman has an insurable interest in stored property to indemnify himself against his liability to his patrons ; and when he receives cotton under agreement to insure it, he may insure in his own name the cotton so held. Therefore where a warehouseman held cotton under such an agreement and insured in his own name, describing the property as "cotton in bales stored in my warehouse," the cotton so stored was covered by the policy.

16. INSURANCE—SUBROGATION.—On payment of a loss covered by insurance, the insurer is subrogated to all the rights which the assured would have, at the time of the contract of insurance, against any person through whose agency a loss should be occasioned, whether such right of subrogation was stipulated in the contract or not. But this right does not extend to rights of action or of indemnity released by the assured before the insurance was effected.

17. MATERIAL FACTS—APPLICATION.—A policy of fire insurance on cotton in bales provided that the omission to state any material fact should avoid the policy. This cotton was stored in a warehouse built on the right of way leased from a railroad company, the lease exempting the lessor from liability for fire caused by sparks from its engines. The policy was issued by an agent residing in the same community, who was familar with the locality, and cotton in the same warehouse had been insured for several previous years. The application by the warehouseman was verbal, and no question was asked nor information given as to this lease and release. *Held*, that the trial judge properly charged the jury that the assured was bound not to withhold, at the time of his application, any fact which he knew or had reason to believe would be likely to influence the insurer in fixing rates or rejecting the insurance. A fact so withheld would be material, but whether the omission to disclose the lease and release or to state that the cotton was held by the appellant only as warehouseman, were

material facts and known so to be by the assured, were facts for the jury.

18. ABSTRACT PRINCIPLE—INSURANCE—WAIVER.—There was no error in refusing to charge that "the local agent cannot, without special authority, waive a condition, nor is it waived by his knowledge of the contract relieving the railroad company." There being no testimony as to the authority of the local agent, the request was based upon a mere abstract principle of law; and moreover, such an agent may sometimes waive limitations.

19. IMMATERIAL ERROR—CONCURRING VERDICTS.—This court will not order a new trial on the ground of erroneous instruction, when it is shown that such instruction could not have changed the verdict, as the same jury, on the same evidence, in a like case, after proper instruction on this point, rendered a like verdict.

20. COMPOUND REQUESTS—NOTICE.—A request to charge that the record of a lease was not notice to one who insured property situated on the leased ground, and that only actual knowledge of the contents of the lease would be notice to the insurer, was properly refused. It is not required of a trial judge to disconnect distinct propositions embodied in a single request; and the latter part of this request was not correct law.

21. JURISDICTION—POLICY—VERDICT.—Whether a verdict is excessive is a question of fact of which, in a law case, this court has no jurisdiction. When a loss by fire exceeds the sum of insurance, the amount of the policy with interest is the sum recoverable.

22. POLICY—CONDITION—KNOWLEDGE BY AGENT.—A policy contained the provision that "if the building stands on leased ground, it must be so represented to the company and expressed in the policy in writing, otherwise the insurance shall be void." The house insured did stand on leased ground, and it was not so expressed in the policy, but the agent who issued the policy knew it. *Held,* that the policy was not void, as the matter relied upon to avoid it was known to the company when it received the premium.

Before FRASER, ALDRICH, and WALLACE, JJ., October, 1889, March, 1890, and March, 1891.

These were ten separate actions, as stated in the title and in the opinion of this court. First in order of time was the order of Judge Fraser refusing to direct a consolidation where there were two cases against the same defendant. The cases were not all heard together on Circuit, as will hereinafter appear. The two cases first stated were heard on appeal at the November term

of 1890.    A reargument having been ordered, they were again heard, together with the other eight, at November term, 1891.

In the case against The Sun Fire Office of London, Judge Aldrich charged the jury as follows:

*Mr. Foreman and Gentlemen of the Jury:* This action involves two issues—one equitable and the other legal; the former to be determined by the court, the latter to be passed upon by the jury, under the instructions of the court.

I will state my conclusions upon the equitable issues. The evidence shows that Cely & Bro. agreed, for a valuable consideration, to receive certain cotton of the plaintiffs, to be kept and stored, as warehousemen, in their warehouse described in the policy and in the pleadings; and also agreed with plaintiffs to indemnify and hold harmless the plaintiffs from any loss or damage to the said cotton by fire from any cause. I hold that Cely & Bro. had an insurable interest in the cotton of the plaintiffs, received and held by them as warehousemen; also, that their contract to indemnify and hold harmless the plaintiffs from any loss or damage to the said cotton by fire from any cause, gave Cely & Bro. an insurable interest in said cotton.

Cely & Bro. having an insurable interest in said cotton, did insure said cotton, the defendant accepting the insurance, and issued to Cely & Bro. a policy covering the cotton in question, which recites, *inter alia*, that the defendant, in consideration of $12.00 paid by Cely & Bro., did insure Cely & Bro. to the amount of $2,000 "on cotton in bales stored in their warehouse, West Greenville," against destruction or damage by fire or by lightning, from January 16th, 1889, to March 17th, 1889. Defendants contend that the terms of the policy restrict the loss to cotton belonging absolutely to Cely & Bro.; and did not, and does not, cover cotton held by Cely & Bro. as warehousemen, or cotton of the plaintiff held by Cely & Bro. under the contract proved between Cely & Bro. and the plaintiffs. I hold, and so decree, that the terms of the policy do cover the cotton of plaintiff, held by Cely & Bro. under the aforestated contract, in their warehouse, and destroyed by fire during the currency of the insurance policy; and that Cely & Bro. could maintain this action.

Cely & Bro. having assigned the policy to plaintiff, I hold that

the plaintiffs have the right to maintain and prosecute this action to the same extent that Cely & Bro. could have done. The conclusion of the court on these issues renders unnecessary any consideration of the question of reformation of the policy; consequently the court will not consider the question of reformation.

*Gentlemen of the Jury:* A good deal has been said about corporations, insurance companies, &c. Both parties to this action are corporations; just as an individual has the right to come into this court and ask its judgment upon any matter the subject of litigation. They are bound by the laws of the State, and are protected by the laws of the State, just as fully and carefully as any two citizens of your county would be entitled to.

You have heard the complaint and the answer read. The complaint contains the allegations of the plaintiff, and upon those allegations he demands a judgment for $2,000 and interest against the defendant. The defendants put in their answer, and state the facts which they rely upon as showing that they do not owe the plaintiffs anything. These are the issues which you must determine by your verdict, upon the evidence submitted in open court, in your presence, and the law as given to you by the court.

I charge you that the policy contains the terms of the contract. It is the duty of the court to construe a written contract, and I charge you that Cely & Bro. had the right to insure cotton held in their warehouse, which they held either as owners, warehousemen, or as warehousemen and insurers, for pay. If nothing disproving this state of facts appear in evidence, and you find that the cotton was destroyed by fire during the currency of the policy, according to the terms of the policy the plaintiffs would be entitled to recover the amount of the loss not exceeding the amount for which the cotton was insured. Did Cely & Bro. insure the cotton described in the complaint? Was it destroyed by fire, and what was the amount of the loss? Have Cely & Bro. assigned their policy to plaintiff? are, with the other questions of fact raised in this case, questions which you must determine.

Defendants allege that the policy of insurance issued by them is void, because Cely & Bro. did omit to make known to defendants a fact material to the risk, to wit: the fact that the ware-

·Pelzer Manuf. Co. *v.* Sun Fire Office. 219

Rep.]                    November Term, 1891.

house stood upon land leased by Cely & Bro. from the Columbia and Greenville Railroad Company for valuable consideration, and upon certain terms and conditions, among which was the following: "That during the continuance of said lease the said Columbia and Greenville Railroad Company, its successors and assigns, shall not be in any wise responsible for any loss or damage to the said building (warehouse), or the contents thereof from fire communicated by the locomotive engines of said company, its successors or assigns, and all such loss or damage shall be borne by the said Cely & Bro." That the fact of the existence of said lease and release not only pertained to said risk, and was very material thereto, but was unusual and unknown to defendant when said policy was issued and delivered.

The policy, according to the allegations of the answer, was to "become void" in the event of "any omission to make known any fact material to the risk." So that a mere omission to make known a fact is not sufficient to avoid the policy; it must go further, it must be the omission of a fact *material* to the risk. That raises a question or questions of fact: Was the release of the railroad company by Cely & Bro. from any responsibility or loss caused by fire from the locomotives of the railroad company to the warehouse, or the contents thereof, a "fact material to the risk?" Did Cely & Bro. omit to make known to defendants, or their agent, the facts in regard to the lease? Did defendants, or their agent, know of this lease and its terms? If defendants, or their agent, did know of this lease and its terms, they cannot complain of such omission by Cely & Bro.; because if they, the defendant company, had knowledge of these facts, then the omission of Cely & Bro. was not material.

This question of a "fact material to the risk" is a question for you. What is a "fact material to the risk"? A fact material to the risk is one which in any way influences, or might influence, the insurer either in accepting or rejecting such risk, or in estimating the degree and character of the same; or which in any way affects the rate of premium at which the risk is assumed; or which, if known to the insurer, would have prevented his accepting or continuing the risk.

I further charge you that the right of subrogation is a legal

right.   That is, when a party insures property with an insurance company, and that property is destroyed by the carelessness, negligence, or unlawful act of another, then the insurance company, upon the payment of the loss, is subrogated to the right of the owner of the property, and is entitled to go against the party or parties who, by their carelessness, negligence, or unlawful conduct, have caused the loss of the property insured.   That is a right which they have.   They have it under the law, and they have a right also to stipulate this right of subrogation.   Is the right of subrogation a fact material to the risk?—risk which the insurer takes to insure the property against destruction by fire. Is the further fact that after a loss occurs by fire that the insurer has the right to go against the party who caused the loss a fact material to the risk?   This I submit to you as a question of fact which you must determine according to the evidence in this case.

Now, then, we come to a second defence, so to speak, or a question which arises in this case, to wit, that the right of subrogation, as they allege, was a material question as the defendants contend—was a material question—and that Cely & Bro., having by their lease and release, freed the railroad company from liability from loss caused by their engines, that that voided the policy.   When a party goes to an insurance company, the ordinary and usual custom is, that he makes application for so much insurance upon certain property, and either by writing or orally, he makes certain representations to the company from whom he seeks insurance.   That is, in common language, called the application for the insurance.   In that application it is the duty of the party seeking the insurance to state all facts material to the risk; but if the insurance company or their agents have knowledge of the facts upon which they issue a policy of insurance, no matter whether that knowledge was derived from the party seeking the insurance or how, then, knowing the facts upon which they issue the policy, and if knowing them, they still issue the policy, then, in law, they have waived their rights.

In coming to the consideration of this cause, did Cely & Bro., in applying for this policy of insurance, make any statements material to the risk which were not true; or did Cely & Bro. omit to make any statement material to the risk which they

should have made, because it was material to the risk?   The insurance company, after the application has been made, issues what has been called a policy of insurance.   That is the written paper.   Now, then, the former, the application, is the tender, the proposal to make this contract of insurance, and the latter is the acceptance by the insurance company of this proposition from the party to insure his property.   The insurance company undoubtedly has the right to accept or make insurance upon property with the right of subrogation reserved to them.   They also have the right to insure property where the right of subrogation is taken away from them.   I have explained to you the question of materiality.   As a question of fact, did they know of this release of the right of subrogation in favor of the railway company; and if they knew it, did they waive it?   Waiver is a question of fact for the jury.

Before I take up the requests to charge, I will state that if the jury concludes that the plaintiff is entitled to a verdict, you cannot give them an amount greater than $2,000, with interest thereon from 60 days after the proof of the loss.   He is entitled to recover the amount of the loss, whatever that loss was, and that is a question of fact for you.   And your verdict would be, if you find for the plaintiff: "We find for the plaintiff so many dollars," adding interest thereon from 60 days after the loss.   Or, if you conclude that the plaintiff has not made out its case, your verdict will be: "We find for the defendant."   You will then write your name as Foreman.

Mr. Smythe: May it please your honor, we are satisfied with your honor's charge, and we withdraw our requests to charge.

Court: The defendants request the court to charge: *First.* "That the Pelzer Manufacturing Company is the assignee of Cely & Bro., having only the rights of Cely & Bro., and cannot recover in this action, unless Cely & Bro. could have recovered if they had brought the action in their own names."   That I charge you as being good law, and have already so instructed you.

*Second.* "That the recording of the lease from the Columbia and Greenville Railroad Company to Cely & Bro. did not constitute notice to the insurance companies of the contents of the lease, and unless the jury find that the insurance company had actual

notice of the contents of the lease when the policies were issued, they cannot be held to have known of the existence of the same, or of its contents." I so charge you. Recording is done in pursuance of an act of the legislature, and it is done for the purpose of giving notice to subsequent purchasers and creditors, and that alone.

*Third.* "That if the jury find that Cely & Bro. omitted to state to the insurance agent when the policy was issued any fact material to the risk, whether the application for insurance was verbal or written, then the policy is void, and the plaintiff cannot recover" (unless the insurance company waived their right). That I charge you—with this limitation or addition : Unless the insurance company waived their right.

*Fourth.* "That any fact, which if known to the insurance companies might have influenced them in accepting or rejecting the risk, or in fixing a higher rate of premium therefor, is material" (and if the insured knew this, or had any reason to know it), "should have been stated when the application for insurance was made, and if not stated the policy is void." That I charge you; that is the law, with this modification : If the insured knew this, or had any reason to know it.

*Fifth.* "That it makes no difference whether Cely & Bro. believed the existence of the lease to be material or not." (Provided Cely & Bro. knew, or had reason to know, or there were any facts or circumstances to put them on notice that it was material, or that it was or had been so regarded by the defendant insurance company.) "And if the jury find that the existence of the lease was material to the risk, and was not made known to the insurance agent when the policy was issued, then the policy is void, whether the failure on the part of Cely & Bro. to make it known was the result of fraud, or ignorance, or accident, or inadvertence, or mistakes." (Provided Cely & Bro. knew, or had reason to know, or there were any facts or circumstances to put them on notice that it was material, or that it was or had been so regarded by the defendant insurance company.) Charged, with above modifications so inserted.

*Sixth.* "That the insurance company is not bound to prove fraud on the part of Cely & Bro., but any failure on the part of

Pelzer Manuf. Co. *v.* Sun Fire Office.      223.

Rep.]                    November Term, 1891.

Cely & Bro. to state any fact material to the risk, is sufficient to prevent a recovery upon the policy, no matter whether such failure was the result of ignorance, accident, negligence, or any other cause." (Provided Cely & Bro. knew, or had reason to know, or there were any facts or circumstances to put them on notice that such fact was material, or that it was or had been regarded by the defendant insurance company as material, and the defendant company had not waived such disclosure.)

*Seventh.* "That ordinarily where insured property is destroyed by the wrongful act or negligence of a railroad company, or its agents, the insurance company has the right, upon payment of the loss, to be placed in the position of the owner of the property, and to recover from the railroad company the amount so paid. This is called the right of subrogation, and inures to the insurance company through the contract of insurance." That I charge you as good law.

*Eighth.* "That by the execution of the lease from the C. & G. R. R. Co., Cely & Bro. deprived themselves of the right to recover from the railroad company, any loss sustained by them by means of fire originating from sparks from a locomotive engine of the railroad company, or by fire originating upon the right of way of the railroad company; and having so deprived themselves of this right, they, at the same time, deprived the insurance company of any right of subrogation against the railroad company, which the insurance company would otherwise have had." That I charge you as requested.

*Ninth.* "That if the building in which the cotton was stored was held under lease, or stood upon leased land, and either of these facts was not stated to the insurance agent when the policy was taken out, or was not expressed in the policy, then the policy is void, this being one of the conditions upon which the policy was issued, and the plaintiff cannot recover." That request I refuse.

*Tenth.* "That in every case it is the duty of the applicant for insurance to state to the insurance agent any unusual circumstances pertaining to the risk, and should he fail to do so, the policy is void. And if the jury find that there was any unusual circumstance pertaining to the risk in this case, and that such

circumstance was not disclosed to the agent of the insurance company (John Ferguson), by the party applying for the insurance, then this policy is void, and the plaintiff cannot recover." I charge you that proposition.

[Mr. Heyward withdraws requests numbers 11 and 12. They were used in case of same plaintiff *v.* German American Insurance Company.]

I am further requested to charge you: "That Cely & Bro., having released the railroad company from liability on account of loss by fire, and thereby deprived the insurance company of its right of subrogation, and having, with full knowledge of that fact, contracted with the insurance company that it should have the right of subrogation in case of said loss by fire, they cannot now recover upon the policy, and it follows that their assignee, this plaintiff, cannot recover." I charge with the following modification: Unless the jury find from the evidence that the defendant insurance company, or its agent, had knowledge or notice of the release given to the railroad company prior to the issuing of said policy of insurance; or unless the jury find from the evidence that the defendant company has in any way waived such stipulation in the policy.

Here are three others: *First.* "That the policy embodies the contract, and Cely & Bro., having accepted said policy, are bound by its terms, whether they read it or not; and the plaintiff in this action is equally bound." That I charge you.

*Second.* "The policy in this case among conditions has one that where the society shall claim that the fire was caused by any act or omission of any person, town, or corporation, which created a cause of action, the party to whom the loss is payable under this policy, shall on receiving payment assign to the society such cause of action. Now, if the railroad company carelessly burned the cotton insured, a cause of action arose against the railroad company, and if the insurance company paid, it would have the right to the use of that cause of action for reimbursement. But if Cely & Bro. had, before it took said policy, rendered themselves (by contract with the railroad company) unable to transfer such right against the railroad company, Cely & Bro., or their assignees, cannot require such payment." That I charge

you, with the modification that the same be considered as limited by the charge in chief.

*Third.* "The local agent cannot, without special authority, waive said condition, nor is it waived by his knowledge of the contract relieving the railroad company." That I decline to charge you.

. The jury found for the plaintiff $2,120.55, and judgment was entered accordingly.

Defendant appealed on the following grounds:

I. Because, it is respectfully submitted, that his honor, the Circuit Judge, erred in refusing to separate, and to try separately, the equitable and the legal issues involved in the pleadings.

II. That his honor erred in excluding the testimony of the witnesses, Livingston Mims, Clarence Knowles, and William N. Hawks, taken, after notice, before a notary public in Atlanta, Ga.

III. That his honor erred in admitting in evidence the letter of E. A. Smythe, president, offering to assign to the defendant insurance company the right of action of the Pelzer company against the railroad company, and the refusal of said offer.

IV. That his honor erred in admitting in evidence the declarations of John Ferguson (the local agent), made after the issuance of the policy, and after the loss.

. V. That his honor erred in holding that the local agent could, by his conduct or otherwise, waive the conditions of the policy, although by the terms of the policy such waiver is especially forbidden.

VI. That his honor erred in holding that the policy, as written, was sufficient to cover the cotton of the Pelzer Manufacturing Company, whereas the evidence showed that the minds of the parties never met, and there never was a valid contract of insurance between the parties.

VII. That the witnesses, E. M. Bollin and others, were allowed to testify as to their conduct, and the amount of insurance they had written on the cotton in question, as also as to the conduct of other insurance companies since the fire.

VIII. That his honor erred in allowing the plaintiff to prove

by general reputation the business of Cely & Bro., for the purpose of charging the defendant with knowledge.

IX. That his honor erred in refusing to charge the jury, as requested by the defendant, as follows: "That if the jury find that Cely & Bro. concealed from the insurance agent, or failed to state to the insurance agent, when the policy was issued, any fact material to the risk, whether the application for insurance was verbal or written, then the policy is void, and the plaintiff cannot recover."

X. That his honor erred in refusing to charge the jury, as requested by defendant, as follows: "That any fact which, if known to the insurance companies, might have influenced them in accepting or rejecting the risk, or in fixing a higher rate of premium therefor is material, and should have been stated when the application for insurance was made, and if not stated, the policy is void."

XI. That his honor erred in refusing to charge the jury, as requested by defendant, as follows: "That it makes no difference whether Cely & Bro. believed the existence of the lease to be material or not; and if the jury find that the existence of the lease was material to the risk, and was not made known to the insurance agent when the policy was issued, then the policy is void, whether the failure on the part of Cely & Bro. to make it known was the result of fraud, or ignorance, or accident, or inadvertence, or mistake."

XII. That his honor erred in refusing to charge the jury, as requested by defendant, as follows: "That the insurance company is not bound to prove fraud on the part of Cely & Bro., but any failure on the part of Cely & Bro. to state any fact material to the risk, is sufficient to prevent a recovery upon the policy, no matter whether such failure was the result of ignorance, accident, negligence, or any other cause."

XIII. That his honor erred in refusing to charge the jury, as requested by defendant, as follows: "That if the building in which the cotton was stored, was held under lease, or stood upon leased land, and either of these facts was not stated to the insurance agent when the policy was taken out, or was not expressed in the policy, then the policy is void, this being one of the conditions

upon which the policy was issued, and the plaintiff cannot recover."

XIV. That his honor erred in refusing to charge the jury, as requested by defendant, as follows: "That Cely & Bro. having released the railroad company from liability on account of loss by fire, and thereby deprived the insurance company of its right of subrogation. and having, with full knowledge of that fact, contracted with the insurance company that it should have the right of subrogation in case of said loss by fire, they cannot now recover upon the policy, and it follows that their assignee, this plaintiff, cannot recover."

XV. That his honor erred in refusing to charge the jury, as requested by defendant, as follows: "The local agent cannot, without special authority, waive said condition, nor is it waived by his knowledge of the contract relieving the railroad company."

XVI. That his honor erred in charging the jury, that to constitute concealment, there must be an intention to conceal, or an intended failure to speak.

XVII. That his honor erred in refusing to charge the jury, that the defendant was bound to pay only its proportion of the loss as adjusted under the average clause, and no more.

At the same term of court, before the same judge (Aldrich), the case against The German American Insurance Company of New York, was tried. The charge to the jury in this case was as follows:

*Mr. Foreman and Gentlemen of the Jury:* This action involves two issues. One an equitable issue, addressed to the chancery side of the court; the other, the legal issue, to be passed upon by the jury under the instructions by the court of law applicable thereto. I can simply state my judgment—conclusions of the equitable issues—without going into a detailed and lengthy statement of the evidence, because, in the first place, the court could not from memory state the testimony as accurately as it would like to do; and in the second place, because, should the court state its recollection of the facts and its conclusions thereupon, they would be expressed within the hearing of the jury, and might to some extent influence the jury in reaching their

conclusions upon the issues of law. After all, the reasoning of the court is no part of the decree, but it is the conclusion of the court which is really effectual.

· With these preliminary remarks, I will take up the equitable issue which involves the decision of two questions. Does the policy, as stated upon its face, cover and protect the property lost, the title of which was, as the evidence has shown it, to wit, to be the actual property of the Pelzer Manufacturing Company, stored in the warehouse of Cely & Bro. under a special contract, including storage and insurance? Undoubtedly a warehouseman has an interest in the property entrusted to his keeping. You may term it qualified or special, or limited or specific, interest, whichever name in all respects would be applicable to it, but that interest, whatever it may be termed, is an insurable interest, because he is responsible in this case in event of loss by fire under this contract, and he had the right by contract to insure this cotton against loss to save himself harmless. His liability to the Pelzer Manufacturing Company was fixed, and certainly by contract. He had the right to protect himself against the consequences of that contract by insuring the property while it remained in his possession under the contract. That is the usual, and probably the best, test of an insurable interest in property.

. The question next arises: Having an insurable interest, did he insure it by the policy which he took from the defendant insurance company? That insurance policy states upon its face that the company does insure Cely & Bro. to the amount of fifteen hundred dollars on cotton in bales, stored in their warehouse, against fire. In the first place, the canon, the rule of construction, is, that, inasmuch as the policy was written by the insurance company, what in fair and legitimate construction can be placed upon the terms of that policy, can be attributed to it, and that the policy must be construed most favorably in favor of Cely & Bro., and most against the insured company. Now, what does the language mean which I have just recited? It means, I apprehend, just what it says—insure Cely & Bro. against loss by fire. What loss? The terms of the insurance company does not restrict the loss. I hold that it means any loss limited to the view I am taking of this case, loss sustained by Cely & Bro. by

the burning of their own individual "cotton in bales" in the warehouse in question, or by the burning of "cotton in bales" in the warehouse in question, for which they are liable should the same be destroyed by fire.

Now, they were certainly liable for that fire, and it being a loss, and Cely & Bro. were insured against loss, it is fair that the insurance company insured them against that loss as well as any other. And just in this particular it may be just as well that the contract under which Cely & Bro. held this cotton for the Pelzer Manufacturing Company went a step beyond and added something more to their liability than warehousemen ordinarily, for they contracted to insure the property to protect it, not only to safely keep it and protect it from an ordinary loss, but to the additional loss by fire, and in addition to the rights of a warehouseman, to insure goods in his warehouse against loss and with additional right to protect themselves against loss by fire severally and specifically contracted.

I further hold, that being the terms of the policy in question, that it was not necessary for the company—for the insured—to have obtained a policy stating or narrating or describing the title which was held in that property. That which I have indicated, the obligation of the insurance company was to protect him against any loss that he might sustain, and while the words are not here, as in that case decided in the United States Supreme Court, "any wise," the words "any less" is as broad as in that case cited. Having held that there is no necessity for the court to take up the second question on the equity side of the court, to wit, the reformation of the contract, that disposes of the equity feature of the case.

Now, gentlemen, I have discharged, according to my best judgment, the duties imposed upon the court. I have assumed those responsibilities, and it is now your duty to take the legal question and decide that question, or questions, according to the evidence you have heard that has been submitted to you in this case under the instructions that the court will give you. And one word in advance. A good deal has been said about insurance companies—their wealth and their greed, etc. Now, I charge you that this is a court of justice. An insurance company has the right to

come into this court and in the manner provided by law to ask the judgment of this court as to whether or not it shall pay a claim, or a demand, brought against it. An insurance company has no more right than an ordinary individual, one of your fellow citizens, who comes into this court and asks to have his rights adjudicated. He has no more privileges and he has no more advantage. An insurance company, like a man, stands in this court as any other suitor would. He must sustain his rights if they have been invaded; the court must protect his rights if others seem to invade them, by just the same rules and the same law which governs the individual. Nothing more, nothing less.

The plaintiff, the Pelzer Manufacturing Company, comes into court, and by its complaint alleges, among other things—you have heard the whole complaint read—that it is now the owner of a policy of insurance, issued by the defendant herein, for fifteen hundred dollars; and it further alleges that Cely & Bro. took out this policy of insurance upon certain cotton stored in the general or open warehouse of Cely & Bro.; and that that cotton was destroyed by fire at the time stated in the complaint, and that the defendant company has not paid the loss, but refuses to pay it. Cely & Bro. took out the policy of insurance, and the defendant company was liable in the first instance, upon the destruction of the cotton by fire, to Cely & Bro. for the loss according to the complaint. Well, Cely & Bro. assigned, transferred, this policy to the Pelzer Manufacturing Company, and that assignment carried to the Pelzer Manufacturing Company all the right and interest which Cely & Bro. had in that policy of insurance to the Pelzer Manufacturing Company. And the Pelzer Manufacturing Company, assignee of Cely & Bro., has all the right to enforce that contract now that Cely & Bro. would have had if they, Cely & Bro., were the plaintiffs in this case.

The insurance company, by its answer which you have heard read—and I state generally, you have heard the pleadings read—comes in and denies that it is indebted to the Pelzer Manufacturing Company for any loss sustained by that fire. Its defence, among other defences, is that the warehouse of Cely & Bro. stood upon the right of way of the railway company—was leased from the railway company, and that in the lease of the railway com-

pany to Cely & Bro. they had agreed with the railway company to exempt them from any liability from loss which might be occasioned by the burning of that warehouse, or the contents stored in it, by fire escaping from the railroad, or escaping from one of its engines. That is substantially one of its allegations. And they say further, that that was a material fact, which it was the duty of Cely & Bro. to have made known to the insurance company, and that inasmuch as they had failed to make known this fact to the insurance company, that that failure made the policy void—that is, no account.

Now, there is a difference between the terms, "concealment of a fact" and "failure to make known a fact." Concealment has the additional element of intention. It is a failure, but it is an intentional failure. That is the difference between concealment and failure. One is a failure to state the facts, and the other is an intentional failure to state them. Now, what is a material fact? Whenever the facts are such that, if known to the insurer, they would have, or might have, a real influence upon him, either in accepting or rejecting the risk, or in determining the rate of premium to be charged therefor, it is deemed a concealment of material facts, if a higher rate would have been charged if such facts had been known. If those were the facts, I hold them to be material. And it is also material if a fact is concealed from the company which, if known to them and known by the party concealing it, would have called for a higher rate of insurance than the party got by concealing the facts. That would be material.

The rule of evidence in the civil court is, that whoever asserts a proposition, whoever makes an allegation, states a fact, and the burden of proof is upon him to prove it. If the plaintiff makes an allegation of fact, then the plaintiff assumes the burden of proof to prove it; if the defendant makes an allegation of facts, the burden of proof is upon him. The rule is, that he who alleges must prove, and you must carry this rule into all of your considerations. And the rule is, that he must prove his allegations by a preponderance of evidence. If the party who alleges a fact introduces evidence to support it, and if the party who denies it introduces evidence to deny it, and if the evidence in your judg-

ment is equal, then that allegation would fall, because the rule says that whoever alleges a fact must prove it by a preponderance of evidence. Evidence means not only the facts testified to by the mouths of witnesses upon this stand, but it also means the papers that have been read in your presence. And it includes facts and circumstances which have been testified to here, and those facts and those circumstances are in evidence before you, either as in themselves showing or convincing you as to certain matters, or as aiding you in reaching your conclusions in weighing the evidence. It is not for the court to say what part of the evidence you will consider or not consider of the greater importance or the lesser importance, but the whole evidence is for the jury. Therefore, going back, he who alleges must prove by a preponderance of the evidence, the truth of the statement he charges or alleges.

I further charge you this, that if the insurance company, or, what is the same thing, their agent, knew of the existence of facts which may be material facts, and the plaintiffs, Cely & Bro., failed to state to the insurance company those facts in making the application to the insurance company, still, if the insurance company, or their agents, knew of those facts, it was not a failure to speak, or a concealment in the eye of the law, because the very purpose, the very object, was accomplished which the insurance company had in view, to wit, being in possession of the facts upon which they were asked to grant a policy of insurance. Then the question arises, did this defendant insurance company know of the facts connected with the Cely & Bro. warehouse, or did Mr. Ferguson, their agent, know of the facts connected with the Cely & Bro. warehouse? Did he know that it stood upon leased ground and upon the right of way of the railway company? Did he know of the release? These are questions of fact which you are to decide. And, as I have charged you, if Mr. Ferguson, the agent of the company, knew of these facts, then the company cannot say the facts have been concealed from them, because they had knowledge of them.

Mr. Smythe: The answer says, "omitted to make known."

Court: Yes, sir; those are the words.

Well, gentlemen, as I have told you, you are to decide this case

according to the complaint and answer, not according to what I say. I have explained to you what a material matter is. The next question is, did Cely & Bro. omit to explain to Mr. Ferguson any material matter pertaining to this policy? Did they omit to state it? The court cannot help you on that question. I have told you what a material fact is; now, did Cely & Bro. omit to state any material fact to the insurance company?

Another view may be taken: An insurance company may be due certain rights, and it may exact those rights, or the insurance company may waive their right to demand compliance on the part of the party seeking insurance. That is, the waiver means to lay aside the original demand. These are questions for you, and I am not stating the evidence. Did the insurance company, either by their language, as used by the company or their agent, or did they by their acts, waive the right or waive the duty of Cely & Bro. to state facts to them which they say Cely & Bro. omitted to state as a material question? If their right to demand of Cely & Bro. a statement as to these facts which are material, or which the defendant company says they omitted to make, were waived, then the waiver cured the want or the necessity or the right or the duty upon Cely & Bro. to state it, and the defendant insurance company would not have a right to insist upon their performance if they once waived it.

Now, in regard to risk and salvage: you have heard a good deal stated about those two questions. A risk in a policy against fire is the risk that that cotton runs from being destroyed by fire, and insurance is based primarily upon that peril to cotton, and to save the owner of the cotton from the loss which he would sustain if the cotton was burnt and he had no insurance on it. That is the risk to protect the property against fire. The risk begins at one end of the transaction, it starts at the beginning, on this side of the fire, and salvage comes out the other end, on the opposite side of the fire. They are separate and distinct questions. Salvage means that after the fire has caught and burned a portion of the property and injured it, there is a certain portion of the property which is rescued from the fire in a damaged condition; that is what the law calls salvage, and belongs to the insurance company.

Subrogation means just what the term defined in any dictionary says. It means to be put in the right that once belonged to another. When an insurance company insures Mr. Smith against fire, and the fire does occur, then the insurance company is subrogated to the rights of Mr. Smith, and among other rights acquired by Mr. Smith would be the right to sue. It is not a right growing necessarily out of stipulations in a contract, because it is a legal right growing out of a contract as a consequence of the contract. It is a right which the law gives you.

I think I need not take up your time further, except these requests to charge, and I will state that I have done what is not ordinarily my duty. As I understand the law, I am not bound to modify a request; I can charge it or refuse it as a whole. There are some of these requests that I have modified.

These are the plaintiffs' requests: *First.* "The jury are instructed, that if they find from the evidence that Cely & Bro. were carrying on the business of warehousemen in the city of Greenville, and that as such they had received from the plaintiff, the Pelzer Manufacturing Company, the cotton in question, and had made themselves responsible to the said Pelzer Manufacturing Company, plaintiff herein, for the safety of the same, that then Cely & Bro. had a sufficient interest in such cotton to enable them to obtain insurance upon it." That I charge you.

*Second.* "And the jury are further instructed, that Cely & Bro. had the right, in order to protect themselves against their own responsibility, as well as to secure any lien for charges, to cause the cotton in question so stored with them by the plaintiff, and in their custody as warehousemen, to be insured to its full value, and the policy need not specify the nature of their interest. And in case of loss by fire, the said Cely & Bro. were entitled to recover the full amount of insurance for their own claim first, if any, and hold the residue for the owner, the plaintiff herein, unless the said Cely & Bro. have violated any of the conditions of the insurance agreement on their part." That I charge you.

*Third.* "The jury are further instructed, that when goods are totally destroyed, actually or constructively, by perils insured against, the insurer, upon payment of the loss, becomes subrogated to all the assured's rights of action against third persons

who have caused, or are responsible for, the loss, and that no express stipulation in the policy of insurance is necessary to perfect the title of the insurer. But that the insurer stands in no relation of contract or of priority with such persons, and the right of subrogation against such other person is only that which the assured has by law or contract against such person. And if the assured's right of action is limited or restricted by lawful contract between him and the person sought to be made responsible for the loss, any suit by the insurer in right of the insured is subject to like limitations and restrictions." I so charge you.

*Fourth.* The jury are further instructed, that if they find from the testimony that either before or after the preliminary proofs of loss were rendered to the defendant by Cely & Bro , the defendant denied any and all liability for the loss under the policy, or refused to pay the same, that such action on the part of the defendant is a waiver of the condition in the policy requiring such proof to be made, and the preliminary proofs, if made, cannot be objected to, or defects therein relied on as a defence in this action." I so charge you.

Just here, I would state that the contract of insurance requires the party. when his property has been destroyed. to make proof of his loss within a limited time, as the policy shows ; and ordinarily, before a party who has lost property covered by a policy of insurance can recover, he must prove the loss, and that he made known the loss to the insuring company. But if the insuring company denies its liability, assumes to say, "I won't pay the loss." then the law does not require the party insured to do a useless act, to present the proof of loss when the insurance company has already told him, "I won't pay your loss." You have heard the evidence here, the proof of loss ; and the notice to the company, and so on, of proof of loss, and the papers, etc.. are in evidence, and you have heard the papers read, so that it is a question of fact for you to pass upon, whether the loss has been proven, and the proof of loss submitted to the company, or whether the company has denied its liability for the loss—it has denied its liability to Cely & Bro. for the loss. Then the cause can go on, for there is no use to do an act which the company themselves have instructed is useless.

*Fifth.* "The jury are further instructed, that it is the general duty of the assured when effecting insurance to disclose all material facts known to him and not to the insurers, or, at all events, facts which they are not bound to know. Before, however, the duty of disclosure arises, the fact must be material to the risk. But the burden is on the defendant, the insurance company, to establish to the satisfaction of the jury, who are the judges thereof, whether such facts are or are not material, and whether or not they were concealed," or omitted. ("Or omitted" was added on motion of Mr. Smythe.) I so charge you.

*Sixth.* "The jury are further instructed, that if they find from the testimony that the policy sued on in this action was issued upon a verbal application, and without any representations in reference thereto, that then all information relative to the risk, except such as is unusual and extraordinary, is waived, and the defendant cannot charge the plaintiff, or its assignor, Cely & Bro., with *laches* induced by its own conduct." I so charge you.

The next requests are those of the defendant, the insurance company.

[The requests and the charge on them were the same as in the preceding case of the Sun Fire Office of London, except that requests numbered 5 and 6 charged in the other case with modifications, were refused in this, and request 10 was charged as follows: "I charge you that with this limitation: That if the unusual circumstance must be one pertaining to the risk, and it need be one affecting the risk, it must be one not only pertaining to the risk, but affecting the risk." The three additional requests in the other case were not asked in this, but the two following, numbered 11 and 12, do not appear in the other case.]

*Eleventh.* "That inasmuch as the policy provides that 'if the assured, in a written or verbal application. makes any erroneous representation, or omits to make known any fact pertaining to the risk, this policy shall be void,' the question of materiality has been waived in this case, and if the jury find that the party applying for the insurance omitted to make known any fact pertaining to the risk, whether such fact be material or not, the plaintiff cannot recover." That I refuse to charge, because a question of waiver is a question of fact for the jury.

*Twelfth.* "That if, after making the oral contract to be responsible to the Pelzer Company in case of the destruction of the cotton by fire, Cely & Bro. delivered to the Pelzer Company receipts for the cotton containing a condition that they (Cely & Bro.) would not be responsible for such loss, this annulled the original contract." That I refuse, because if the parties made a continuing contract, one party could not terminate it without the consent of the other. That is a question of fact among others.

Now, I have gone over these requests to charge. You will take this case, and if you conclude to find in favor of the plaintiff, your verdict would be for the amount due upon that policy, together with interest at the rate of seven per cent. from——for the amount of the loss, the damage sustained by this fire, from sixty days after the proof of loss was made.

Mr. Heyward: I ask the court to charge as to the $1,492.00.
Court: That is a question of fact for the jury. You cannot go over the amount of the policy, but you will have to find the actual loss with interest on it from sixty days after the proof of loss.

If your verdict is for the plaintiff, you will say, "We find for the plaintiff so many dollars," aggregating it, and writing it out in dollars and cents, not in figures, but in words. If you find for the defendant, you will simply say, "We find for the defendant." You cannot find more than fifteen hundred dollars. If you find in favor of the plaintiff, you find what was the actual loss by that fire, and interest on the amount you find, computing it after the proof of loss.

The jury found for the plaintiff $1,589.54, and judgment was entered accordingly.

The defendant appealed on the same grounds as in the preceding case, except the one numbered 14 and with three additions, as follows:

*a.* That his honor erred in admitting in evidence a conversation had after the fire between E. A. Smyth, president of the Pelzer Manufacturing Company, and John W. Murray, relative to the terms of the policy.

*b.* That his honor erred in charging the jury, that "to consti-

238    Pelzer Manuf. Co. v. Sun Fire Office.

Judge's Charge.                    [36 S. C.

tute 'concealment,' there must be an intention to conceal or an intended failure to speak."

*c.* That his honor erred in refusing to charge the jury, that the defendant was bound to pay only its proportion of the loss as adjusted under the "average clause," and no more.

The remaining eight cases were tried before Judge Wallace and a jury at the March term of 1891, as follows: the two cases against The Hibernia Insurance Company were tried together; the two cases against The Hamburg-Bremen Fire Insurance Company, and the two cases against The Southern Insurance Company of New Orleans, four in all, were tried together; and the two cases against The American Fire Insurance Company of Philadelphia were tried together.

In the two cases against The Hibernia Insurance Company, tried together, the judge charged the jury as follows:

*Gentlemen:* This has been to me an interesting case, and I hope it has been equally interesting to you. I will try to state to you in a very short compass what I wish to say. You have heard a great deal about subrogation. That is a technical word, familiar to the gentlemen of the bar, but unknown to laymen. Now, suppose that a railroad company here, by way of illustration, by reason of some accident loses goods that have been shipped upon it from Charleston to Greenville. Common carriers are insurers unless they are prevented from delivering by the act of God or the public enemy. Upon an assumption that they do not deliver goods received for shipment, and such failure is caused by their own negligence, the consignee has a right of action against the carrier. Suppose the consignee has insured the goods and they are destroyed. The consignee goes to the insurance company and collects the loss, and then he assigns his right against the railroad to the insurance company; then the insurance company sues the railroad company. The assignment of the rights of the consignee to the insurance company is subrogation; that subrogates, as we call it, the insurance company to the rights of the consignee, and that is called his right of subrogation. That is an illustration that perhaps makes it plainer to you than if I would undertake to define it in legal terms. In this case the in-

surance company puts in its policy that any person that insures cotton, and loses the cotton by reason of the negligence of the railroad company, and collects the value of the cotton on this policy, shall assign their right against the railroad company to the insurance company ;  that is called the right of subrogation. That is what it means.   It is a great big long word, but its significance is in a limited compass.

Now, what is a material fact ?   When that term is used in connection with an application for an insurance policy, it is a fact which, if known, would have a positive influence on the insurance company in refusing or granting the application.   That is a material fact.   I don't know that there are any other terms that I should define to you.

It appears that Cely & Bro. bought 1,000 bales of cotton for the Pelzer Manufacturing Company, and put it in their warehouse here in Greenville.   It caught fire and was burnt up, the Cely Bros. in the meantime having effected insurance upon it with the Hibernia Insurance Company of New Orleans, and when that cotton was burnt up, they assigned that policy to the Pelzer Manufacturing Company and the Pelzer Manufacturing Company brings this action.   The right of the Pelzer Manufacturing Company to bring this action is not questioned by the defence.   They say that they have all of the rights that Cely & Bro. would have. There are two cases you are trying, one upon a policy which insured cotton for $3,500, and the other for $500.   The insurance company, after some preliminary interviews between their agents and Cely & Bro., here decline to pay the policy, and the action is brought upon these two policies.   The plaintiffs come in and prove their loss of the cotton by fire, and submit certain proof as to the transactions which took place between the agents here in this city and Cely & Bro. in further support of their right to recover in the two actions.

The defendants set up two defences which they allege are sufficient to defeat the right of recovery upon either of these policies. First, they say that at the time Cely & Bro. applied to the agents here for an insurance policy, they concealed certain material facts from the agent of the company here, and that he stipulated subsequently in this contract that if he had at that time concealed a

material fact, that this policy should be void. You will remember that it was in evidence here that what is called a Southeastern Tariff Association had fixed certain rates of insurance upon this building that was in existence at the time Cely applied for the insurance. One of the Celys went to the agent of the company here and asked to have a certain amount of cotton insured. No representations were made or asked for one way or the other. The agent of the company had lived in this city for many years. He had lived at a point not remote from the warehouse consumed by fire. He had frequently been to that warehouse when goods and cotton had been stored in it. Under that state of facts, Cely applied to this company for insurance for $3,500 at one time and $500 at another time. No questions were asked, no representations were made; no proof of any whatever.

Under that state of circumstances, what has Mr. Cely got to do under the law? Well, the law always and under all circumstances requires honesty and fair dealing. Mr. Cely, if he knew of any fact that was material to the risk, and withheld it from the knowledge of the agent, that would not be honest and fair dealing. If he knew any fact that honesty and fair dealing required him to disclose to that agent, and he withheld it, that would not be honesty and fair dealing. That would be concealment. Now, the insurance agent representing the company has got no right to sit there like a sphinx and require that Mr. Cely shall state to him every fact that that agent or this company shall subsequently conceive to be material. It is stipulated in this policy that it shall be entirely void if the insurer has concealed at some time prior to its issuance any material facts. You see it is in the past tense, and this stipulation relates to what took place at the time of the contract and not after that time.

As I have already said, an insurance company has no right to require the insured to state everything that an agent who represented the company may then or subsequently think to be a material fact on pain of forfeiting all rights under the policy to be subsequently issued. The agent can ask anything that he sees fit, and if he does not ask, he has no right to require that what is in his mind and what he may subsequently think shall be met unless that condition is disclosed to the applicant. The agent at

that time, unless he sees fit to tell what may be a material fact, is bound by what the applicant honestly thinks is material. Mr. Cely was not bound by what was in this policy, that was subsequently signed in New Orleans and forwarded to him here, that was not disclosed to him at the time of the contract. Everything in this policy which required subsequent conduct on the part of Mr. Cely, subsequent to its delivery to him, he is bound to conform to according to the terms of the policy. I don't know that I need state anything more. As I have said to you, the insurance company had the right to ask him anything they pleased in regard to the subject-matter of the applications, and anything that they ask him he is bound to answer them truthfully, and anything that he conceals or misrepresents, that is a concealment of a material fact; but when the company leaves it to Mr. Cely to state material facts, then the company is bound by Mr. Cely's estimate of what is material and what is not material.

There is another ground of defence which arises out of the policy. This policy is a contract; it is not signed by Mr. Cely. It is signed by the proper officers in the city of New Orleans, is delivered to Mr. Cely, and he accepts it, and it is a contract between them, and that clause is as follows: "If this company shall claim that the fire was caused by the act or neglect of any person or corporation, private or municipal, this company shall, on payment of the loss, be subrogated to the extent of such payment to all right of recovery by the insured for the loss resulting therefrom, and such right shall be assigned to this company by the insured on receiving such payment." Well, the word "subrogation" is in there, and the word "assignment" is in there, and the defendants claim that Mr. Cely lost cotton that was insured by this contract, and it was lost, as the insurance company might claim, through the negligence of the railroad company. Mr. Cely might have a cause of action against the railroad company; he may assign that to the insurance company.

At the time that this contract was entered into there was a lease in existence under which Mr. Cely leased from the Columbia & Greenville Railroad Company a piece of land upon which was built the warehouse, and released the railroad company from liability for loss by its negligence. That lease was in existence

16—36

at the time this policy was executed. If the insurance company knew that lease was in existence, it would be no defence to this action. They say that they did not know it; that the release of the railroad company was a material fact which was concealed from them, and that they are thereby released from all obligations under the policy. Whether that was a material fact or not is a question of fact for the jury. You have heard the testimony, you have heard what all of the witnesses said, and you are to say from the evidence whether it was a fact which, if known to the company, would have had a positive influence on the company in granting the policy. If you find that it was a material fact, and that it was concealed from this company, it vitiates the policy; if not, it does not.

I have been requested to charge you as follows for the plaintiff: (Read 6th and 7th requests and charged same.)

6. The jury are further instructed, that it is the general duty of the assured, when effecting insurance, to disclose all material facts known to him and not to the insurers, or, at all events, facts which they are not bound to know. Before, however, the duty of disclosure arises, the fact must be material to the risk. But the burden is on the defendant, the insurance company, to establish to the satisfaction of the jury, who are the judges thereof, whether such facts are or are not material, and whether or not they were concealed.

7. The jury are further instructed, that if they find from the testimony that the policies sued on in this action were issued upon a verbal application, and without any representations in reference thereto, that then all information relative to the risk, except such as is unusual and extraordinary, is waived, and the defendant cannot charge the plaintiff, or its assignor, Cely & Bro., with *laches* induced by its own conduct.

Now, gentlemen, for the defence all these requests, with one or two exceptions, are in conflict with what I have already charged.

[The requests of defendant in these cases were the same as in the case against The Sun Fire Office, *ante*, p. 221, except as here stated: No. 1 was charged; Nos. 2 to 6 inclusive were refused; No. 7 was as follows, and was charged:

*Seventh.* "That where insured property is destroyed by the

wrongful act or negligence of a railroad company, or its agents, the insurance company has the right, upon payment of the loss, to be placed in the position of the owner of the property, and to recover from the railroad company the amount so paid. This is called the right of subrogation, and inures to the insurance company through the contract of insurance and specially called for "by the policy."

Nos. 8, 9, and 10 were refused. The subsequent requests were as follows:]

*Eleventh.* "That if, after making the oral contract to be responsible to the Pelzer Company in case of the destruction of the cotton by fire, Cely & Bro. delivered to the Pelzer Company receipts for the cotton, containing a condition that they (Cely & Bro.) would not be responsible for such loss, this annulled the original contract." No.

*Twelfth.* "That the policy embodies the contract, and Cely & Bro., having accepted said policy, are bound by its terms, whether they read it or not; and the plaintiff in this action is equally bound." Yes.

*Thirteenth.* "The policy in this case, among other conditions, has, if this company shall claim that the fire was caused by the act or neglect of any person or corporation, private or municipal, this company shall, on payment of the loss, be subrogated to the extent of such payment to all right of recovery by the insured for the loss resulting therefrom, and such right shall be assigned to this company by the insured on receiving such payment. Now, if the railroad company burned the cotton insured, a cause of action arose against the railroad company, and if the insurance company paid, it would have the right to the use of that cause of action for reimbursement. But if Cely & Bro. had, before they took said policy, rendered themselves (by contract with the railroad company) unable to transfer such right against the railroad company, Cely & Bro., or their assignees, cannot require such payment." No.

*Fourteenth.* "The local agent cannot, without special authority, waive said condition, nor is it waived by his knowledge of the contract relieving the railroad company." No.

*Fifteenth.* "That the policy requires that proofs of the loss

shall be rendered the company within thirty days after the fire, and containing certain particulars specified in the policy, that the best proof of said proofs of loss is the paper itself, and unless the plaintiffs have shown to the satisfaction of the jury that said proofs of loss were duly rendered to the defendant within thirty days, and contained all the particulars required by the policy, they cannot recover." Yes.

Now, gentlemen of the jury, as was said to you in the argument, this is a contract just as any other contract; it is bigger than some other contracts, and has more in it than some other contracts, but it is the law between the parties as to this transaction, and so far as concerns what occurred preliminary to entering into the contract I have given you my views about it. Whether or not there was a concealment of a material fact must be judged of in relation to the time that the application was made, and must not be judged of at the time this contract was received here in Greenville after its execution in New Orleans.

Mr. Hammond: Those papers are signed in blank in New Orleans and declared that it is not to be valid until countersigned by their local agent.

Court: In the absence of proof, I am obliged to presume that the application preceded the paper, and was not made on this paper (policy).

Mr. Heyward: That is a fact, but it is filled out in blank and sent here and countersigned by the local agent.

Court: Well, I was misled by the grammar of the contract, which says that if the plaintiff "has concealed." So, gentlemen, if you find for the plaintiff on this contract, you say, "We find for the plaintiff" the amount you think they are entitled to recover, with interest from the time it became due. If you do not think the plaintiff is entitled to recover, say, "We find for the defendant." Take the record.

The jury found for the plaintiff in the first case $3,953.04, and in the second case $564.72.

Defendants appealed on the following grounds:

I. That his honor, Judge Fraser, erred in refusing to consoli-

date and remove the causes to the United States Circuit Court upon the presentation of the petition and bond of the defendant.

II. That he erred in holding that the causes could not be consolidated and removed.

III. That he erred in holding that the defendant, having moved to consolidate, had thereby lost the right to remove either cause to the United States Court, and in requiring the defendant to answer in both causes, or submit to judgment in the State court.

IV. That the defendant, having fully complied with the law in respect to the removal of causes from the State court to the United States Court, it is submitted that the State court thereupon lost all jurisdiction of the causes, and all proceedings in the causes subsequent to that time were *coram non judice*, null and void.

V. That his honor, Judge Wallace, erred in allowing the causes to proceed to trial and judgment in disregard of the protest of defendant against it.

VI. That even if the State court had not been deprived of jurisdiction, it is submitted that his honor, Judge Wallace, erred in the following particulars, to wit:

1st. In charging the jury as requested by the plaintiff, as follows: "Before, however, the duty of disclosure arises, the fact must be material to the risk. But the burden is on the defendant, the insurance company, to establish to the satisfaction of the jury, who are the judges thereof, whether such facts are or are not material, and whether or not they were concealed."

2nd. In refusing to charge, as requested by defendant, as follows: "That the recording of the lease from the Columbia and Greenville Railroad Company to Cely & Bro. did not constitute notices to the insurance companies of the contents of the lease, and unless the jury find that the insurance company had actual notice of the contents of the lease when the policies were issued, they cannot be held to have known of the existence of the same, or of its contents.

3rd. In refusing to charge, as requested by defendant, as follows: "That if the jury find that Cely & Bro. omitted to state to the insurance agent, when the policy was issued, any fact ma-

246    Pelzer Manuf. Co. *v.* Sun Fire Office.

Exceptions.                                    [36 S. C.

terial to the risk, whether the application for insurance was verbal or written, then the policy is void, and the plaintiff cannot recover."

4th. In refusing to charge, as requested by defendant, as follows : "That any fact which, if known to the insurance companies, might have influenced them in accepting or rejecting the risk, or in fixing a higher rate of premium therefor, is material, and should have been stated when the application for insurance was made, and if not stated, the policy is void."

5th. In refusing to charge, as requested by defendant, as follows : "That it makes no difference whether Cely & Bro. believed the existence of the lease to be material or not; and if the jury find that the existence of the lease was material to the risk, and was not made known to the insurance agent when the policy was issued, then the policy is void, whether the failure on the part of Cely & Bro. to make it known was the result of fraud, or ignorance, or accident, or inadvertence, or mistake."

6th. In refusing to charge, as requested by defendant, as follows : "That the insurance company is not bound to prove fraud on the part of Cely & Bro., but any failure on the part of Cely & Bro. to state any fact material to the risk is sufficient to prevent a recovery upon the policy, no matter whether such failure was the result of ignorance, accident, negligence, or any other cause."

7th. In refusing to charge, as requested by defendant, as follows : "That by the execution of the lease from the C. & G. Railroad Company, Cely & Bro. deprived themselves of the right to recover from the railroad company any loss sustained by them by means of fire originating from sparks from a locomotive engine of the railroad company ; or by fire originating on the right of way of the railroad company ; and having so deprived themselves of this right, they at the same time deprived the insurance company of any right of subrogation against the railroad company, which the insurance company otherwise would have had."

8th. In refusing to charge, as requested by defendant, as follows : "That if the building in which the cotton was stored was held under lease, or stood upon leased land, and either of these facts was not stated to the insurance agent when the policy was

taken out, or was not expressed in the policy, then the policy is void, this being one of the conditions upon which the policy was issued, and the plaintiff cannot recover."

9th. In refusing to charge, as requested by defendant, as follows: "That in every case it is the duty of the applicant for insurance to state to the insurance agent any unusual circumstances pertaining to the risk; and should he fail to do so, the policy is void. And if the jury find that there was any unusual circumstance pertaining to the risk in this case, and that such was not disclosed to the agent of the insurance company (R. C. Goodlett) by the party applying for the insurance, then this policy is void, and the plaintiff cannot recover."

10th. In refusing to charge, as requested by defendant, as follows: "That if, after making the oral contract to be responsible to the Pelzer Company in case of the destruction of the cotton by fire, Cely & Bro. delivered to the Pelzer Company receipts for the cotton, containing a condition that they (Cely & Bro.) would not be responsible for such loss, this annulled the original contract."

11th. In refusing to charge, as requested by defendant, as follows: "The policy, in this case, among other conditions, has, 'If this company shall claim that the fire was caused by the act or neglect of any person or corporation, private or municipal, this company shall, upon payment of the loss, be subrogated to the extent of such payment, to all right of recovery by the insured for the loss resulting therefrom, and such right shall be assigned to this company by the insured on receiving such payment.' Now, if the railroad company burned the cotton insured, a cause of action arose against the railroad company, and if the insurance company paid it, would have the right to the use of that cause of action for reimbursement. But if Cely & Bro. had, before they took said policy, rendered themselves (by contract with the railroad company) unable to transfer such right against the railroad company, Cely & Bro., or their assignees, cannot require such payment."

12th. In refusing to charge, as requested by defendant, as follows: "The local agent cannot, without special authority, waive

said condition, nor is it waived by his knowledge of the contract relieving the railroad company."

13th. In charging the jury as follows: "Now, the insurance agent representing the company has got no right to sit there like a sphinx and require that Mr. Cely shall state to him every fact that that agent or this company shall subsequently conceive to be material;" and, "as I have already said, an insurance company has no right to require the insured to state everything that an agent who represented the company may then or subsequently think to be a material fact, on pain of forfeiting all rights under the policy to be subsequently issued."

14th. In charging the jury as follows: "The agent at that time" (when the application is made), "unless he sees fit to tell what may be a material fact, is bound by what the applicant honestly thinks is material. Mr. Cely was not bound by what was in this policy that was subsequently signed in New Orleans, and forwarded to him here, that was not disclosed to him at the time of the contract. Now, everything in this policy which required subsequent conduct on the part of Mr. Cely, subsequent to its delivery to him, he is bound to conform to according to the terms of the policy."

15th. In charging the jury as follows: "When the company leaves it to Mr. Cely to state material facts, then the company is bound by Mr. Cely's estimate of what is material and what is not material."

VII. It is submitted that inasmuch as the policies require that "proofs of loss" shall be made out and furnished to the company, before the assured shall have the right to require payment, and the plaintiff having failed to prove that such "proofs of loss" were made out and furnished, they cannot now recover.

VIII. That the verdict of the jury in each case was in excess of the amount called for by the terms of the policy.

IX. That his honor erred in admitting in evidence the letter of E. A. Smyth, president, addressed to the defendant, dated July 5th, 1889, and the answer to said letter; also the letter of John C. Whitner to E. A. Smyth, dated July 13th, 1889.

X. That his honor erred in admitting in evidence the oral statements of the witnesses Goodlett, Willis, Cely, and John

Ferguson, as to the ownership of the land on which the warehouse stood.

XI. That his honor erred in admitting in evidence the conduct of other insurance companies, in issuing policies upon the new warehouse, after the destruction of the cotton herein sued for.

XII. That his honor erred in admitting oral testimony to show that "proofs of loss" had been made out, and delivered to the agent of the company.

The next four cases, two against The Hamburg-Bremen Fire Insurance Company and two against The Southern Insurance Company, were tried next day before the same jury, on the same evidence and charge, with such additions as were deemed proper.

The requests to charge in these cases were the same as in the case of The Pelzer Manufacturing Company *v.* The Hibernia Insurance Company, with the following additions by defendants:

That if the jury believe that the warehouse stood upon leased ground, and it was not stated in writing in the policies, then the plaintiff cannot recover, this being one of the conditions of the policies.

Modify request to charge No. 11, by substituting from the policy, after the words, "thus the policy in this cause, among other conditions, has," this: "And the assured shall, if required, assign to this company all his right to receive satisfaction for the loss from any other person or persons, town or corporation, with a power of attorney to sue for and recover the same at the expense of this company," and conclude as requested in said 11, beginning, "Now, if the railroad," &c., to end (*ante*, p. 247).

These policies contain an average clause. You will therefore, if you find for the plaintiff, find respectively only the averages shown by the proofs of loss in evidence.

Under the agreement, these cases went to the jury under the same charge as given by his honor, the Circuit Judge, in the case of The Pelzer Manufacturing Company *v.* The Hibernia Insurance Company, with the following additions and modifications made by the Circuit Judge:

Gentlemen: I think I will have very little to say to you in addition to what I thought proper to say to you yesterday even-

ing. You understand there are six cases submitted to you together, on each of which you are to find a verdict on the testimony which you heard yesterday, with that that you have heard supplemented this morning. Counsel have given you to understand that they repeat the argument made yesterday, that is, they stand by the same arguments they made yesterday, and I do the same thing in regard to the matter of instructions as to the law, except as to one matter, and that is as to the recording of the lease, whether the simple recording of the lease was notice to the insurance company—was notice of the lease and notice of the terms of the lease. I charge you to-day that that was not actual or constructive notice to the insurance companies of its contents.

It is understood that what you were charged yesterday is in effect repeated to-day, and I need not go over it. I said to you yesterday, if you will remember, that these policies are only a contract between the parties; the insurance company and the insured, the person who has the insurance, are the parties to the contract. It is technically called a policy; each one is bound by it just as they would be bound by any other contract, any contract of purchase and sale. All of these stipulations bind each party to it.

Now, I am requested by the defence to charge you: "That if the jury believe that the warehouse stood upon leased ground, and it was not stated in writing in the policies, then the plaintiff cannot recover, this being one of the conditions of the policies." Well, I don't like to charge you just as it is phrased there, but I prefer to charge you as I have stated to you: That in those policies where the warehouse is upon leased ground, that fact must be stated, or else the policy is void. Now, if there is anything stated in the contract, the non-existence or non-appearance of which would avoid the policy, that is the contract, and they are bound by it.

You have heard that in each of these contracts there is an average clause. It seems that there was an understanding between Cely & Bro. and these insurance companies that no one company was to insure to the full amount the property insured, but that each company in case of loss was to pay its average proportion of the loss, reference being had to the amount of property in-

sured by each and the proportion such amount bore to the whole loss.   As I have said, that average clause is binding upon the parties, and no party is bound for more than his proportion of the whole amount of loss.   This is the calculation made out here. Mr. Cely testifies that that does not represent correctly the whole amount of his loss.   The amount in the policies is $42,500, and the amount claimed is $45,000.   In making up your verdict, you must consider this testimony in regard to that clause in the policies which provide an average liability as to the whole amount of losses.

(After being out about two hours, the jury was brought into court.)

Court: Mr. Foreman, you have not agreed on a verdict?

Foreman: No, sir.

Court: The sheriff handed me this note: "We are not satisfied as to whether the record of lease was sufficient in law to notify the insurance company, thereby causing them to waive the clause as to ownership of realty on which the house was built."

Juror Ligon: Your honor, I believe I am the only one stickling on the point of the recording of that lease.   I am aware that the record of matters generally in the county and State have the effect to estop citizens in this country; then whether or not the recording of the lease which Mr. Cely had is sufficient to notify those parties?

Court: I charged the jury before they went out, that the record of the lease was not notice to the insurance company, and whether they had notice or not is a matter of fact; but the mere record of the lease, if it should be standing by itself, is not notice of itself, but whether the insurance company had notice of the existence of the lease or not is for the jury to say.

Juror Ligon: Assuming that to be the fact, we would have the right to give judgment against them?

Court: I cannot tell you that, but the mere recording of a lease standing by itself would not be notice to an insurance company in an action like this.   Whether the insurance company had knowledge of the existence of that lease is a question of fact, and in determining that question you are to consider all of the

testimony given on that subject.    The record of the lease stand-
ing alone is not sufficient notice in a matter of this sort.

The jury found for the plaintiff in the first case, $6,216.48 ;
in the second case, $2,260.54 ; in the third case, $1,695.40 ; and
in the fourth case, $1,130.27.

The defendants appealed on the grounds *ante* p. 245, omit-
ting subd. 2 of ground VI. and ground VII.

The two cases against The American Fire Insurance Company
were, by agreement, next tried before the same jury, and submit-
ted on the same evidence and under the same charges as in the
other six cases tried at this term.    The jury found for the plain-
tiff in the first case, $5,651.35, and in the second case, $1,130.-
27.    The defendants appealed upon the grounds taken in the
Hibernia Insurance Company cases, *ante* 245, except that ground
VII. and subd. 2 of ground VI. are omitted, and subd. 10 of
ground VI. here in the place of subd. 11 of the same ground
there is as follows :

10th. In refusing to charge, as requested by defendant, as fol-
lows : "The policy in this case among other conditions has this,
'And the assured shall, if required, ·assign to this company all
his right to receive satisfaction for the loss from any other per-
son or persons, town or corporation, with a power of attorney to
sue for and recover the same at the expense of this company.'
Now, if the railroad company burned the cotton insured, a cause,
of action arose against the railroad company, and if the insurance
company paid, it would have the right to the use of that cause of
action for reimbursement.    But if Cely & Bro. had, before they
took said policy, rendered themselves (by contract with the rail-
road company) unable to transfer such right against the railroad
company, Cely & Bro., or their assignees, cannot require such
payment."

The following additional subdivision was also added to ground
VI. in this case : "In refusing to charge, as requested by defend-
ant: 'that if the jury believe that the warehouse stood upon
leased ground, and it was not stated in writing in the policies,·

then the plaintiff cannot recover, this being one of the conditions of the policies.' "

*Messrs. N. J. Hammond* and *Julius H. Heyward,* for appellants.

I. That his honor, the presiding judge, erred in refusing to try and determine separately the equitable issues involved in the pleadings, and in holding that the policy, as written, was sufficient without reformation to cover the cotton of the Pelzer Manufacturing Company. 12 S. C., 108; 17 *Id.,* 544; 22 *Id.,* 320; 18 *Id.,* 232; 23 *Id.,* 392; 25 *Id.,* 80 and 81; 3 Barn. & A., 478; 4 Hall, 94–112; 5 El. & Bl., 870; 1 *Id.,* 652–63–64; 36 N. Y., 655; 112 Mass., 131; L. R. 5 Ch. Div., 569; 93 U. S., 527; 55 N. Y., 268 *et seq. ;* 2 Johns. Ch., 632 *et seq.,* and 17 Johns., 373; 64 N. Y., 453 *et seq.;* 33 *Id.,* 680; 75 *Id.,* 593; 1 Wood on Insurance, 19 *et seq.;* 2 *Id.,* §§ 506–7–8, 69, 96; Adams's Equity, 171; 21 S. C., 235.

II. That the bonds and petitions for removal having been duly filed with the clerk of the Court of Common Pleas, that court was deprived of jurisdiction in the causes, and all proceedings subsequent to such filing were *coram non judice,* null and void. 25 U. S. Stats. at Large, 434 *et seq. ;* Dillon on Removal (5th edition) sec. 135 *et seq.;* 41 N. Y., 149; 16 Peters, 98; 15 How., 198; 19 Wall., 214; 100 U. S., 457; 102 *Id.,* 135; 103 *Id.,* 485; 106 *Id.,* 118; 104 *Id.,* 5; 111 *Id.,* 134; 23 Fed. Rep., 515; 131 U. S., 240; 45 Fed. Rep., 804; 19 *Id.,* 885; 10 *Id.,* 401; *Ibid.,* 401; *Ibid.,* 204; 17 *Id.,* 275 ; 18 *Id.,* 619; 11 *Id.,* 355; 19 *Id.,* 51; 20 *Id.,* 10; 13 Blatchf., 218; 4 Dill., 242; 67 N. Y., 544; 96 U. S., 539; 140 *Id.,* 137; 29 La. Ann., 372; 40 Fed. Rep., 185; 122 U. S., 513, and cases therein cited; 21 Fed. Rep., 1; 74 N. Y., 53; 81 Am. Dec., 769; 2 T. R., 639; 9 Wend., 450; 3 *Id.,* 441 ; 2 Bail., 380; 4 Hill (N. Y.), 46; 24 S. C., 430; Code of Procedure, §§ 188, 406; 23 Fed. Rep., 1; 32 S. C., 145; 7 Johns., 306; 16 Abb., 188; 11 S. C., 133; 33 *Id.,* 450; 4 Wait Prac., 580, 584; 6 How. Prac., 108; 4 *Id.,* 95; 5 Sand., 657.

III. That his honor erred in his rulings upon the questions of evidence, as follows : 1. In admitting in evidence the letters of

E. A. Smyth, president, to the defendants, and the answers thereto. 2. In admitting the oral testimony of Goodlett, Willis, Cely, and Ferguson as to the title to the land on which the warehouse stood. 3. In admitting testimony as to the conduct of other insurance companies after the fire, and after a new and different warehouse had been built. 4. In admitting in the Hibernia cases oral testimony to show that "proofs of loss" had been made out and delivered to the agent of the company. Gould's Pleadings, ch. 3., §§ 170, 171, 183, 184, 188, 189, 190 ; 1 Chit. Pl., *228, *229 ; 24 Ga., 211 ; 29 *Id.*, 461–69 ; 29 *Id.*, 399–402 ; 26 *Id.*, 111, and citations; 26 *Id.*, 332 ; 151 *Id.*, 212 ; Pom. R. & R. R., §§ 578, 642, 657 ; 16 N. Y., 297 ; 1 Greenl. Evid., § 192 and note ; 13 Eng. Law & Eq. R., 140, 145 ; 62 N. Y., 61 *et seq.;* 20 *Id.*, 56 ; 18 *Id.*, 389 *et seq. ;* 1 Wood Ins., 409, note 2 ; 2 *Ibid.*, 927 *et seq.;* 7 Gray, 370 ; 11 *Id.*, 163.

IV. That his honor erred in refusing to charge, as requested by the defendant's counsel, upon the questions of "concealment" and "materiality," and in charging the jury that "the burden is on the defendant, the insurance company, to establish to the satisfaction of the jury, who are the judges thereof, whether such facts are or are not material, and whether or not they were concealed." 3 Burr., 1905 ; 1 Sm. Lead. Cas. (7th Am. edit.), 853 *et seq.;* 1 Pars. Ins., 495 ; L. R., 2 Q. B., 595, 605 ; 2 Pet., 48 *et seq.*, and 10 Pet., 515 *et seq.;* 5 Hill (N. Y.), 188 ; 18 Fed. Rep., 473 ; 13 Wall., 367 ; 17 Wend., 366 ; 8 How., 245 ; Harper, 241–2 ; 1 Beav., 452 ; Condy Marsh. Ins., *465, *468, *371 ; 3 Kent Com. (5th edit.), 282–3, and cases cited, and 285.

V. That his honor erred in holding that the local agent could and did waive the conditions of the policies. 20 N. Y., 55 ; 18 *Id.*, 389 ; 62 *Id.*, 61 *et seq.*

VI. That his honor erred in refusing to charge, as requested by the defendant (The Hibernia Insurance Co.), that the recording of the lease was not notice to the insurance company. Gen. Stats., §§ 1810, 1776 ; 6 Rich., 437 ; 23 S. C., 543 ; 9 Ga., 23 ; 51 *Id.*, 296–97 ; also Judge Wallace's charge in Pelzer Man. Co. *v.* Hamburg-Bremen Co., in which he states that he was in error in his charge in the Hibernia case.

VII. That the insurance companies have the right, upon pay-

ment of the loss, to be subrogated to all the rights of the insured as against any person or corporation causing the loss; and in these cases the defendants would have the right of action against the railroad company, were they not cut off by the terms of the lease under which Cely & Bro. hold the warehouse and lot.     13 Metc., 105; 13 Wall.. 570; 117 U. S., 321; Gen. Stat., § 1511; 24 S. C., 366; 51 N. Y., 166; 100 Mass., 507; 2 Cush., 87.; 66 Barb., 284.

VIII. That this right of subrogation exists in every case, and where the policy contains a clause distinctly requiring a preservation and transfer of said right unimpaired to the insurance company (as in the cases of the Hibernia Company and the American), and the insured makes a contract by which said right of action is impaired, the rule is absolute that no recovery can be had upon the policy.     18 Fed. Rep., 473; 129 U. S., 128; 117 *Id.*, 312; 123 Pa. St., 516.

IX. That his honor erred in charging the jury in the language set out in the 13th, 14th, and 15th exceptions of the defendant, The Hibernia Company, and in the 12th, 13th, and 14th exceptions of the other defendants, as to "materiality" and "concealment."     3 Kent Com. (5th ed.), 282–3, and cases cited; *Ibid.*, 285; 1 Sm. Lead. Cas. (7th Am. ed.), 853; 1 Phil. Ins. (5th ed.), §§ 537, 534, 531, 532, 571, 575, 592; 1 Wood Ins., §§ 214, 211, 230.

X. That the verdicts and judgments are in excess of the amounts allowed by the respective policies.

XI. That his honor erred in refusing to charge the jury, as requested by the defendant, particularly with reference to the policy issued by the American Company on the warehouse, that "if the jury believe that the warehouse stood upon leased ground, and it was not so stated in writing in the policy, then the plaintiff cannot recover, this being one of the conditions of the policy." 10 Fed. Rep., 232; 10 Pet. 507; 7 Gray, 370; 62 N. Y., 47; May Ins., §§ 285, 287 ; 11 Gray, 163.

XII. That when Cely & Bro. took policies, each stipulation therein became part of their contracts with the insurance companies and binds them, whether they or their agents who accepted them read the policies or not.     112 Miss., 71; 17 Am. Rep.,

69; 48 N. Y., 132; 8 Am. Rep., 526–531; 62 Pa., 83–87; 1 Am. Rep., 389; 18 N. Y., 777; 2 N. Y. Supp., 365.

*Messrs. Smythe & Lee* and *Orr & Wells*, contra.

April 21, 1892. The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER. The ten cases above stated, which, for convenience of reference, we have numbered from one to ten consecutively, were heard and will be considered together, as the most material questions are common to them all, though there are questions peculiar to some which do not arise in all of the cases, which will be noted and considered in the progress of this opinion. They were all actions brought by the plaintiff on policies of insurance, issued by the defendant companies respectively, to recover damages incurred from the destruction by fire of certain cotton alleged to be the property of the plaintiff, except that in No. 10 the policy was issued upon the warehouse in which said cotton was stored, and not upon the cotton itself.

In all of these cases, except those numbered one and two, applications were made to the Court of Common Pleas by the appellants before answers filed for the removal of said cases to the Circuit Court of the United States upon the ground of the diverse citizenship of the parties. Inasmuch as the amounts sued for in the cases numbered 4, 6, 7, 8, and 10 did not exceed the sum of two thousand dollars, and were, therefore, below the jurisdictional limit, it was very clear that they could not be removed, and hence the defendants, with a view to meet this difficulty, sought to have the two actions against the same defendant consolidated. Accordingly, a petition entitled in both of the cases against The Hibernia Insurance Company was filed, in which, amongst other things, it was stated that the causes of action in each of the two cases were of the same nature, between the same parties, and that the same can be united in one complaint; and after stating the diverse citizenship of the parties, and offering the requisite bond, as provided for by the act of Congress in this behalf, the prayer was "that said two suits be consolidated into one by this court, and that this court do proceed no further except to make an order of removal and to accept said bond, and cause the records to be re-

moved into said Circuit Court of the United States, in and for the District of South Carolina."

Upon the filing of this petition with the accompanying bond in the office of the clerk of Court of Common Pleas for Greenville County, where these actions had been commenced, the defendant company gave notice of a motion "for an order removing the above entitled causes to the Circuit Court of the United States for the proper District, and for such other and further relief as may be proper." This motion came on to be heard by his honor, Judge Fraser, who, in a short order, without assigning any reasons, dismissed the motion, whereupon defendant excepted upon the following grounds: "I. That his honor erred in holding that the above entitled causes could not be consolidated and removed. II. That his honor erred in holding that the defendant, having moved to consolidate, had thereby lost the right to remove either of the above entitled causes to the United States Court. III. That his honor erred in requiring the defendant to answer both complaints or submit to judgment in this court, the defendant having fully complied with the provisions of law for the removal of causes from this court to the United States Court."

The motion to consolidate and remove having been refused, the defendant filed separate answers in each of the cases under protest, and the trial proceeded likewise under protest from defendant, which resulting in verdicts against defendant in both of the cases, judgments were entered upon the verdicts, from which defendant appeals upon grounds, amongst others hereafter to be noticed, substantially the same as those upon which the motion to consolidate and remove was rested.

Applications of a similar character were, at the same time, made for consolidation and removal of the two cases against The Hamburg-Bremen Fire Insurance Company, The Southern Insurance Company of New Orleans, and The American Fire Insurance Company of Philadelphia, and made in precisely the same way, in every respect, except that the notice of the motion in the cases against The Hamburg-Bremen Company, The Southern Insurance Company, and The American Company, was "for an order consolidating said actions and removing the same," &c., while the notice of the motion in the cases against The Hibernia Company was, as

17—36

has been stated, "for an order removing," &c., omitting the words, "consolidating said actions and." The motions in these last named cases having been also refused, the defendants therein likewise answered under protest, and the trials proceeded also under protest, and having resulted in judgments for the plaintiffs, these defendants also appeal upon the same grounds, amongst others, stated above.

Before proceeding to make any statement of the facts applicable, in common, to all of the cases mentioned in the title, or of the several questions on the merits presented by this appeal, it seems proper, first, to dispose of the jurisdictional question growing out of the application for removal of certain of the cases. As to the difference in the phraseology of the notice of motion mentioned above, upon which a point was made in the argument here, we do not think it amounts to anything. The petition for consolidation and removal of the two cases against the Hibernia Company plainly shows that its purpose was to obtain an order for consolidation as well as removal, and the exceptions to the order refusing the motion conclusively show that an order for consolidation was asked for. It does not seem to us, therefore, that the omission in the notice of motion above indicated is sufficient to differentiate the Hibernia Company cases from the others. but that, practically, they all stand upon precisely the same footing, so far as this matter is concerned. We will, therefore, as a matter of convenience apply our remarks to the application for consolidation and removal of the two cases against the Hibernia Insurance Company, and the conclusion reached will be decisive of the question in the other cases.

It is conceded that an application for removal of the second case against that company, numbered 4 in the title, would necessarily fail because of the admitted fact appearing on the record, that the amount involved in that case is insufficient to warrant its removal to the Federal court. We think it equally clear that the first case against this company, numbered 3 in the title, could not be removed under the proceedings instituted, for while the amount involved in that case was sufficient, and diverse citizenship of the parties was admitted, yet there was really no application for the removal of *that* case. There was

but one petition and one bond filed in the two cases jointly, and
for aught that appears the party defendant did not desire the re-
moval of one of the cases without the other.   The petition shows
on its face that the application for removal of the two cases was
based, and necessarily based, upon a condition precedent, to wit,
the consolidation of the two cases, for until that was done, the
cases could not be removed to the Federal court; No. 3 could
not, because there was no application to remove that case alone,.
but only in connection with No. 4, which, as we have said, could
not be removed because the amount sued for in that case was in-
sufficient.  The defendant, by its proceeding, elected that the two
cases should stand or fall together, and to this end consolidation
was an essential prerequisite.  We do not rest our conclusion in
this respect solely upon the fact that the petition and bond were
entitled in the two cases, but upon the fact that the two are com-
bined in the body of the petition as well as in the prayer thereof,
and also in the notice of 'motion.  The court could not know,'
therefore, from anything appearing on the record, that the defen-
dant desired that one of the cases should be removed without the
other, and, on the contrary, were bound to assume, from what did
appear upon the record, that the application was for the removal
of the two cases after they had been consolidated.

It is necessary, therefore, to inquire whether there was any
error in refusing the motion to consolidate.  It has long been
settled, in this State at least, that a motion to consolidate
is addressed to the discretion of the court; not, of course,
an arbitrary or a capricious discretion, but a legal discre-
tion, to be exercised in view of all the surrounding facts and cir-
cumstances.  *Treasurers* v. *Bates*, 2 Bail., 380; *Worthy* v.
*Chalk*, 10 Rich., 142.  It seems also to have been settled, that
where the consolidation will have the effect of ousting the juris-
diction in which the several cases were brought, it will not be
granted.  *Bank* v. *Cowing*, 2 Nott & McC., 439, where the mo-
tion to consolidate was refused, because, if granted, it would oust
the jurisdiction of the City Court of Charleston, limited to an
amount less than the aggregate amount sued for in the several
cases; *Parrott* v. *Green*, 1 McCord, 531, and *Gaffney* v. *Bran-
ham*, 4 McCord, 125, where it was held that a motion to consoli-

date should not be granted where the effect would be to oust the summary process jurisdiction.    These two cases last cited must be regarded as overruling the old case of *Phillips* v. *DeLane*, 2 Brev., 429, where a contrary view seems to have been taken. Under these rules it is clear that there was no error on the part of Judge Fraser in refusing the motion to consolidate.

There is also another reason why the motion to consolidate should have been refused.    The rule, as we understand it, is, that upon the filing of the required petition and bond in a case which may be removed under the provisions of the act of Congress, the State court at once loses its jurisdiction, and has no authority to proceed further.    To use the language of the Supreme Court of the United States, in one of its latest utterances, in the case of *Marshall* v. *Holmes*, 141 U. S., at page 595: "If, under the act of Congress, the cause was removable, then, upon the filing of the above petition and bond, it was in law removed so as to be docketed in that court (Circuit Court of the U. S.), notwithstanding the order of the State court refusing to recognize the right of removal."    If this be so, then it follows that Judge Fraser had no jurisdiction to grant the motion to consolidate, or to take any other step in the cause, so soon as the petition and bond were filed, provided the case was, as appellant claims, removable.    Indeed, under the rule as above stated, we see no necessity for, or propriety in, the State court granting an order for the removal of a cause, properly removable to the Federal court; for if the State court loses its jurisdiction immediately upon the filing of the petition and bond, its order granting a removal would be nugatory.    If, however, the State court is of opinion that the cause is not properly removable under the provisions of the act of Congress, it simply disregards the petition and proceeds with the cause, and if, when final judgment is reached, it proves to be adverse to the party applying for removal, he may, we suppose, have the question as to whether the cause was properly removable, reviewed by the Supreme Court of the United States.    We are, therefore, of opinion that so much of the appeals in the eight cases last mentioned in the title, as relate to the refusal of the motions to consolidate and remove, must be dismissed.

In the cases numbered 1 and 2 in the title, a question is raised which is not presented in any of the other cases, and will, therefore, next be disposed of. It seems that in the complaints in these two cases, the plaintiff asked reformation of the policies of insurance sued upon so as to conform to what was alleged to be the real intention of the parties; and at the outset of the trial, defendants asked that the equitable issue raised by the application for reformation be first disposed of, which motion was refused; and this is the basis of the first ground of appeal in those cases. Inasmuch, however, as the Circuit Judge, in the outset of his charge to the jury, announced his conclusion that the policies as written were sufficient to cover the losses claimed, and therefore there was no necessity for any reformation, it seems to us that the first ground of appeal loses its practical importance and may be dismissed from further consideration.

We will proceed, therefore, to consider the several questions common to all the cases, except No. 10, in which the policy was upon the warehouse and not upon the cotton, in which the question peculiar to that case will be subsequently considered.

It will be necessary first to make some general statement of the facts out of which the questions now to be considered arose. It appears that Cely & Bro. were cotton buyers and general warehousemen, doing business in the city of Greenville; that under an agreement with the plaintiff, they bought a large amount of cotton for plaintiff, which they stored in their warehouse located near the track of the Columbia and Greenville Railroad Company and within the limits of its right of way, which said Cely & Bro., by the terms of said agreement, undertook to store and insure for a stipulated rate of compensation, and that to indemnify themselves they took out the several policies of insurance sued on in these cases; that after said cotton was destroyed by fire, which seems to have originated from sparks from the passing engines of said railroad company, the said policies of insurance were assigned to plaintiff by Cely & Bro., and these actions were instituted by plaintiff as assignee upon the said policies against the several defendant companies. The policies in five of the cases contain what is known as a subrogation clause, whereby the insured stipulate that the insurer shall, upon payment of any loss,

have the right to enforce any cause of action which the insured may have against any person by whose act or omission such loss may be occasioned, while in the other five cases the policies contain no such express stipulation.

It further appeared that the warehouse, in which the cotton was stored at the time it was destroyed by fire, stood upon land leased by Cely & Bro. from the railroad company several years before, which lease had been duly recorded, and contained a provision that the railroad company should not be liable for any loss occasioned by fire communicated from the locomotive engines of the railroad company, but that such loss should fall upon Cely & Bro. The policies also contain the usual provision, that unless otherwise provided by agreement endorsed thereon, the same shall be void if the interest of the insured be other than unconditional and sole ownership in the property insured; as well as the usual clause providing, in some of the policies, that any omission to state, and in others any concealment or misrepresentation of, any fact material to the risk, shall render the policy void. . In cases numbered 1 and 2 in the title of this appeal, the policies purport to insure Cely & Bro. "on cotton in bales stored in their warehouse, West Greenville, S. C., subject to average clause," &c.; while in the other cases the language is "on cotton in bales, their own or held by them in trust, or on commission, contained in their warehouse," &c.

The grounds of appeal are very numerous, and we cannot undertake to set them out here, or consider them in detail, though they, together with the charges of the Circuit Judges, before whom the cases were tried, should be incorporated in the report of these cases. We prefer to take up the points made by the counsel for appellants in their argument here.

The first point which we will now consider alleges error in the rulings, upon the questions of evidence, in the following particulars: (a) In admitting in evidence the letters of E. A. Smythe, as president of plaintiff company, and the replies thereto. It seems that after the fire occurred, the president of plaintiff company, understanding that the insurance company refused to pay because they were deprived of the right of subrogation by reason of the clause in the lease above referred to,

exempting the railroad company from liability to Cely & Bro., addressed a letter to the insurance company, offering to assign any right of action the plaintiff might have against the railroad company to the insurance company upon the payment by it of the amount due on the policy ; and this is the letter which was received in evidence against the objection of defendant's counsel, as well as the reply of the insurance company referring plaintiff to defendant's counsel. The objection, as we understand it, is based upon two grounds—first, that it was an offer of compromise, and, second, that it was irrelevant. We do not see that it was any offer of compromise, and it certainly was not irrelevant, for in the complaint there was a distinct allegation that the offer had been made, and this allegation was denied by the answer, and thus an issue was raised upon which the plaintiff had a right to offer evidence. If it was irrelevant, then the proper course for defendant to pursue would have been to move to strike out such allegation, and not to object to evidence tending to establish an allegation which he had seen fit to deny.

(b) In admitting in evidence the declarations of John Ferguson made after the fire, as well as the declarations of Murray. Inasmuch as these declarations related solely to the question of the reformation of the policies sued upon in cases numbered 1 and 2, which had been eliminated from the case by the decision of the Circuit Judge that it was not necessary, it is not necessary to consider the competency of such testimony.

(c) In admitting the testimony of Bollin and others as to the conduct of other insurance companies after the fire, in taking risks upon cotton stored in the new warehouse erected at the same place where the one which had been destroyed by fire had stood. It will be observed that this testimony thus objected to was offered in reply, after the defendant had been permitted to offer testimony. tending to show that the right of subrogation was regarded as so material by reputable insurance companies, as that some of them would refuse to take risks where that right was barred or released, and others would only take such risks at a higher rate of premium. It was therefore clearly competent for the plaintiff to show in reply that reputable

insurance companies did take risks, with a knowledge of the clause in the lease releasing the right of subrogation upon cotton stored in the warehouse located on land covered by the lease and instead of charging a higher rate of premium, actually charged less; which reduction, however, was doubtless due to the change in the construction of the new warehouse.

(*d*) In allowing plaintiff to prove, by general reputation, the nature of the business of Cely & Bro., for the purpose of charging defendant with knowledge thereof. As to this specification, we would remark, first, that it does not clearly appear that any such evidence was admitted. On the contrary, it does appear in the record of the case against the Sun Fire Office of London, that when such evidence was offered, it was objected to and the objection was sustained. But waiving this, it seems to us that after the nature of the business in which these parties were engaged had been made to appear by the direct testimony of their book-keeper, as well as by the testimony of one of the partners, the fact that it was generally known in the community was a circumstance tending to show that it was known to insurance agents doing business in that community, and was therefore competent.

(*e*) In refusing to allow the depositions of Mims and others, taken by a notary public in Atlanta, Georgia, read in evidence. This specification applies only to the two cases first named in the title of this appeal. This testimony purports to have been taken under the provisions of the act of 1883. 18 Stat., 373. The sealed envelope in which the testimony was enclosed, was endorsed "The Pelzer Manufacturing Company *v.* The Southern Insurance Company of New Orleans and others—10 cases." There was therefore nothing which would indicate that the testimony enclosed was taken in the two cases then under trial, and hence there was no error in refusing to allow it read in those two cases.

(*f*) In admitting the oral testimony of Goodlett and others as to the ownership of the land on which the warehouse stood. In regard to this specification, we have to remark, first, that as the defendant first inquired of its witness as to the ownership of the land and the warehouse, the way was there-

by opened for the plaintiff to pursue the inquiry by similar questions to its witnesses. But in addition to this, we think the testimony was competent anyhow. The question of title was not really involved in the issue, but was simply a collateral matter, to which the strict rule as to the mode of proving title to real estate was not applicable. In such a case, ownership, or rather, reputed ownership, may be proved by parol. 1 Greenleaf on Evidence, section 101.

(*g*) In admitting oral testimony, in the cases against the Hibernia Insurance Company, that "proofs of loss" had been made out and delivered to the insurance company or its agent.

13    It seems that there was a clause in the policies issued by this company, providing that the amount of loss or damage having been determined in the mode prescribed, the sum for which the company may be liable "shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of the loss having been received by this company in accordance with the terms of this policy." And another clause provides that such proof of loss shall be made in writing, specifying various particulars, which need not be mentioned here. The thing to be proved, therefore, was *not* what was contained in the written proofs of loss, but the fact that such written proofs had been furnished to the company within the prescribed time, and we do not see why this substantive fact may not have been proved by oral evidence. Especially is this so, when the evidence objected to tends to show that the proofs of loss were made out in writing by the agent of the insurance company, signed by the insured, and left with the company. See *Bish* v. *Hawkeye Insurance Company*, 69 Iowa, 184. But in addition to this, it is well settled that, in the absence of any allegation or evidence of any deficiency in the "proofs of loss," and where the insurance company claims that the policy is forfeited or rendered void upon other grounds, that amounts to a waiver of the requirement of the preliminary proofs of loss. See *Dial* v. *Life Association*, 29 S. C., 579, and the cases there cited.

We come next to the consideration of the several exceptions to the charge, or rather charges, of the two Circuit Judges—the first two cases having been heard before his honor, Judge Al-

drich, and all the others before his honor, Judge Wallace. First, as to the question which arises only in the cases numbered 1 and 2, whether there was error in construing the terms of the policies as sufficient, without reformation, to cover the entire value of the cotton destroyed, or rather to the extent of the amounts named in the policies. It appears that the Southeastern Tariff Association, of which these two companies seem to have been members, had prescribed a form of policy to be used where insurance was effected by a warehouseman on cotton or other property stored in his warehouse, different from that used in these two cases, which difference is indicated in our preliminary statement of facts. That association, however, while no doubt entitled to high consideration, has no power to enact any law, or prescribe what shall or shall not constitute a contract between parties. These companies did enter into contracts of insurance with Cely & Bro., and the proper construction of such contracts must be determined by the court from the terms of the papers evidencing such contracts, read in the light of surrounding circumstances.

One of these circumstances, which seems from the evidence to have been generally known in the community, and known to the agents through whom the insuarance was effected, was that Cely & Bro. were general warehousemen, engaged in the business of buying and storing cotton for others, and amongst others the plaintiff company. There is also evidence that there was a special agreement between Cely & Bro. and the plaintiff, whereby the former was bound to insure the cotton bought by them for the latter, and that they did so insure said cotton. The words of the policies in these two were, as we have seen, "on cotton in bales stored in their warehouse," &c., and the question is, whether those words were properly construed by the Circuit Judge. It is conceded, as we understand it, and at all events it is well settled, that a warehouseman has an insurable interest in property stored in his warehouse, to indemnify himself against any liability which he may incur to his patrons by reason of his relation to them as wareheuseman; and if he, by special contract with any one of his patrons, assumes a more extended liability than that incident to his employment as warehouseman,

we see no reason why he may not indemnify himself against such extended liability by taking out insurance upon the property for which he has assumed such liability. Indeed, Cely & Bro., by their special agreement with plaintiff, had become insurers of the cotton, and when they took out the policies in question here, they practically effected re-insurance thereon, a thing which is not unfrequently done, as we understand, by regular insurance companies. As has been said frequently in the course of the argument of these cases, there is no magic in a contract of insurance, but it must be judged of and construed like all other contracts between man and man. The inquiry is, what was the intention of the parties, as evidenced by the terms of the contract; and to that inquiry we think the Circuit Judge, who heard these two cases, has given the correct answer.

We propose next to consider the matter of subrogation, and first, we would remark that the fact that in some of these policies the right of subrogation was provided for in express terms, while in others no such express provision is to be found in the policies, cannot, in our judgment, make any real difference. For the right of subrogation rests upon well settled general principles, and need not therefore be the subject of special contract. It seems to us that in all these cases, either with or without the special subrogation clause, the insurance companies would, upon the payment of the amounts found to be due upon their respective policies to the insured, have the right to be subrogated to all the rights which the insured had at the time the contract of insurance was entered into, against any person or persons through whose agency the loss was occasioned. But we do not understand that this right of subrogation would extend to any right of action, or any indemnity which the insured may have once had, but had released before the contract of insurance was entered into.

To apply our remarks to these cases: If Cely & Bro. once had, as they undoubtedly did have, a right of action against the railroad company to recover damages for the destruction of the cotton by fire originating from sparks communicated by the locomotive engines of the railroad company, and had, in the lease executed in December, 1882, about six years before these contracts

of insurance were entered into, surrendered or released such right of action against the railroad company, by the provision in the lease to that effect, the insurance companies could not claim a right to be subrogated to such surrendered or released right, for the simple reason that no such right existed at the time the contracts of insurance, which would otherwise give rise to the right of subrogation, were entered into. It seems to us, therefore, that the only application which this matter of subrogation has to these cases, is in relation to the questions raised as to the forfeiture of the policies by the alleged omissions to state, or the concealment or misrepresentation of, facts material to the risk, which will next be considered.

It will be observed that the policies sued on in all these cases contain a provision that the failure to make known any fact material to the risk will render the policies void. In some of them the provision is that the omission to state any material fact shall avoid the policy, while in others the language is stronger—"concealed or misrepresented any material fact"—which would seem to imply an *intentional* withholding of such fact; but so far as the questions presented in these cases are concerned, we think it may be assumed without prejudice (certainly to the appellants), that the provision in all of the policies is expressed in the milder form of a mere omission to state any material fact. In considering this branch of these cases, we must keep in mind the fact that all of the policies were issued upon verbal applications, and that no questions were asked and no representations made except as to the amount of insurance wanted, the property to be insured (cotton), and its location at the time. We must also bear in mind that all of the insurance agents through whom these policies were obtained resided in Greenville, and at least some of them, if not all, were familiar with the locality of the warehouse, and had been in the habit for several years of taking risks on cotton stored in that warehouse for Cely & Bro.

The appellants claim that the several policies were rendered void by the omission on the part of Cely & Bro. to make known the fact, that by one of the provisions of their lease from the railroad company, they had released such company from liability to

them for any loss incurred by reason of fire communicated from the locomotive engines, and had thereby deprived the insurance company of the right of subrogation, which they otherwise would have had; and that Cely & Bro. had failed to communicate the fact that they were not the absolute and unconditional owners of the cotton insured. The law upon the subject of the effect of such omissions has been most elaborately and ably argued by the counsel on both sides, and while we have derived much pleasure and profit from the consideration of their arguments, as well as the numerous authorities cited, yet we must think that the whole matter lies in a very narrow compass, and is to be determined more by reason and common sense, and the indisputable principles of right and wrong, than by elaborate citations of authority. When Cely & Bro. applied for insurance on this cotton, they were bound, even in the absence of any special stipulation in the policies which were subsequently delivered, not to withhold any fact which they knew, or had reason to believe, would be likely to influence the insurance companies either in fixing the rate of premium or in rejecting the risk altogether; and this is what the jury were instructed would constitute a material fact. The jury having thus been properly instructed as to what would constitute a material fact, it was then their province to determine whether a given fact was material (*Hume* v. *Insurance Company*, 23 S. C., 202), and also whether it was known, or ought to have been known, to the applicant for insurance at the time to be material.

Insurance companies or their agents are, of course, presumed to know what facts and circumstances are material to the risk offered much better than the persons who are applying for the insurance, and if they choose to accept the risk without inquiry, and, when a loss occurs, it appears that some fact which the insurance companies may regard as material to the risk was not communicated by the insured, common honesty and fair dealing forbid that this shall operate as a forfeiture of the policy, unless it also appears that the insured either knew at the time or ought to have known that such fact was material. Inasmuch as insurance companies, when applied to for insurance, have the right to make, and, as a matter of fact, do make, the fullest and most minute inquiries when the application is in writing, the insured

has a right to assume, when no such inquiries are made, either that the insurance companies or their agents are fully acquainted with all the facts material to the risk, or that they do not regard such facts as are not stated as material.   As was said in *Clark* v. *Manufacturers' Company*, 8 How., at page 249·: "If the insurer asks no information, and the insured makes no representations, * * * it must be presumed that the insurer has in person or by agent, in such a case, obtained all the information desired as to the premises insured, or ventures to take the risk without· it, and that the insured, being asked nothing, has a right to presume that nothing on the risk is desired from him."   And again : "When representations are not asked or given, and with only this general knowledge the insurer chooses to assume the risk, he must, in point of law, be deemed to do it at his peril," citing with approval the remarks of Lord Mansfield to same effect in the leading case of *Carter* v. *Boehm*, 3 Burr., 1905, reported also in 1 Smith Lead. Cas., 270.

The next point which will be considered is whether there was error in refusing the request to charge, as follows : "The local agent cannot, without special authority, waive said condition, nor is it waived by his knowledge of the contract relieving the railroad company."   In considering this point, as well as all the others based upon refusal of the requests to charge, we must keep in mind the well settled rule, that the refusal of a request to charge an abstract principle of law, even though it be correct, unless it appears applicable to the case as made by the testimony, affords no ground for a new trial.   What was the scope of the agency of the several agents from whom these policies were obtained does not appear in the testimony, and, therefore, we do not think that the question sought to be raised by this request to charge is properly before us.   But even if it were, we think that the principles laid down in *Insurance Company* v. *Wilkinson*, 13 Wall., 222, and *Insurance Company* v. *Mahone*, 21 *Id.*, 152, even as qualified by the subsequent case of *New York Life Insurance Company* v. *Fletcher*, 117 U. S. Rep., 531, would have justified the refusal of the request, under the testimony, as to the scope of the agency in these cases ; for in the case last cited, it appeared not only that the authority of the

agent was limited, but also that such limitation was made known to the insured by being embodied in the application which the insured had signed.

We come next to the question whether the record of the lease constituted constructive notice of its contents. This question arises only in the two cases against The Hibernia Insurance Company, as in the other cases the jury were instructed in accordance with the request. In the first place, we think it very obvious that this instruction—that the record did constitute notice—could not possibly have affected the verdict, for the reason that on the day after these cases were tried, the remaining cases, numbered 5, 6, 7, 8, 9, and 10, were submitted to the same jury upon the same evidence substantially, at least so far as this matter was concerned, but with instructions that the record of the lease did *not* constitute notice, and yet the verdicts in these last cases were also in favor of the plaintiff, showing conclusively that the jury were not influenced by the instruction in the Hibernia cases that the record did constitute notice. So that even if this instruction, thus proved to be immaterial, was erroneously refused, it would constitute no ground for a new trial.

But was the request erroneously refused? The request was couched in the following language: "That the recording of the lease from the Columbia and Greenville Railroad Company to Cely & Bro. did not constitute notice to the insurance companies of the contents of the lease, and unless the jury find that the insurance company had actual notice of the contents of the lease when the policies were issued, they cannot be held to have known of the existence of the same, or of its contents." It will thus be seen that this request, embodied in a single sentence, involved two propositions—first, that the record did not constitute notice, and, second, that "actual notice *of the contents of the lease*" was necessary to affect the insurance company with notice. Now, under the well settled rule, unless *both* of these propositions were correct, there was no error in the refusal, as it is not the duty of the Circuit Judge to disconnect several propositions embodied in a single request, and sustain such as are sound and reject those that are unsound. *Gunter* v. *Graniteville Manufacturing Company,* 15 S. C., 454; *Columbia*

272    Pelzer Manuf. Co. v. Sun Fire Office.

Opinion of the Court.    [36 S. C.

*Insurance Company* v. *Lowrance*, 2 Peters, 25; *Indianapolis &c. R. R. Co.* v. *Horst*, 93 U. S., 291. Now, even conceding the first proposition was correct, it is quite clear that the second was not; for if so, then a person who knows of the existence of a deed, lease, or other like paper, could always escape the effect of notice by refusing to read the deed or hear what was in it, and thus be enabled to say that he had no knowledge of its contents. The request, therefore, went too far, and under the rule above stated was properly refused.

The point made, that the verdict and judgment in each of the cases was in excess of the amount secured by the respective policies, cannot be sustained. This point, as it seems to us, raises only questions of fact, of which this court cannot take cognizance. There was evidence tending to show that the amount of the loss exceeded the aggregate sum of all of the policies, and if this evidence was satisfactory to the jury, then the plaintiff unquestionably had the right to recover the total amount of the risk assumed by each of the companies, with interest thereon from the time the same became payable under the terms of the policies.

It seems to us that these views cover all the points raised by the several exceptions in the several cases, except that numbered 10, and need not, therefore, be considered in detail. It only remains to consider so much of the exceptions as may be peculiar to case No. 10, in which the insurance was upon the warehouse and not upon the cotton. We think, however, that the points raised in this case are also substantially covered by what we have said. The point peculiar to this case is, that inasmuch as the policy contained a provision, that "if the building named stands on leased ground, it must be so represented to the company and expressed in the policy in writing, otherwise the insurance as to such property shall be void," the Circuit Judge erred in refusing to charge, that if the warehouse stood upon leased ground, and that fact was not stated in writing in the policy, then the plaintiff cannot recover. In the first place, an examination of the charge will show that while the judge did refuse the request in the form in which it was presented, yet he did, in substance, instruct the jury in accordance with that request.

But in any event, the request in its unqualified form was properly refused. as is shown by the case of *Philadelphia. Tool Company* v. *British America Assurance Company,* 19 Am. St. Rep., 596 (132 Penn. St., 236), which, in principle, is not distinguishable from this case. As was said in *Menk* v. *Home Insurance Company,* 9 Am. St. Rep., 160 (76 Cal., 51): "The tendency of the decisions is plainly to hold all those conditions waived which, to the knowledge of the agent, would make the policy void as soon as delivered. Otherwise the company would knowingly receive the money of the applicant without value returned, and the whole transaction would be a palpable fraud." In this case there was no doubt of the fact, that the building stood upon leased ground, and there was evidence tending to show that the insurance agents knew that fact, and, if so, then as a strict enforcement of the condition of the policy above quoted would have rendered it void as soon as issued, that would place the insurance company in the attitude of receiving money through its agent for which it had not made, and did not intend to make, any return; and this, as both reason and authority say, would be a fraud. There was no error, therefore, in refusing the request in its unqualified form.

In conclusion, we think it proper to say, in order to prevent any supposition that we have overlooked any of the numerous points raised by these appeals, that we consider such points as are not specifically referred to as either covered by what we have said, or where they rest upon refusal of requests to charge that they were, practically, allowed by the general charge. For example, although the request to charge as to the effect of an omission to mention any unusual circumstance affecting the risk was refused, yet the same principle was embraced in the general charge, and hence there was no error in refusing such request. *Gunter* v. *Graniteville Manufacturing Company,* 18 S. C., 262.

The judgment of this court is, that the judgment of the Circuit Court, in each of the ten cases mentioned in the title of this appeal, be affirmed.